932 So.2d 605 (2006)
USAA CASUALTY INSURANCE COMPANY, Appellant,
v.
Janie M. SHELTON and David L. Shelton, Appellees.
No. 2D05-1307.
District Court of Appeal of Florida, Second District.
June 30, 2006.
Rehearing Denied August 14, 2006.
*606 Jeffrey R. Fuller of Brasfield, Fuller, Freeman & O'Hern, P.A., St. Petersburg, for Appellant.
Theodore "Ted" E. Karatinos of Prugh, Holliday & Karatinos, P.L., Tampa, for Appellees.
NORTHCUTT, Judge.
Janie and David Shelton sued their insurer, USAA Casualty Insurance Company, seeking underinsured motorists (UM) benefits under their automobile policy. The jury returned a verdict in favor of the Sheltons and the trial court entered judgment against USAA in the amount of $50,000, the policy limits. After unsuccessfully moving for remittitur or a new trial, USAA has appealed the judgment. It contends that the trial was tainted by the court's decision to allow the Sheltons to introduce evidence concerning USAA's standards for payment of personal injury protection (PIP) benefits. We agree that the admission of this evidence was error, but, as we will explain, the error was harmless in this case. Accordingly, we affirm.
In September 2002, Janie Shelton was injured in an automobile accident. With USAA's authorization, the Sheltons settled their personal injury claims against the negligent driver for the $25,000 policy limits of that driver's liability insurance. USAA paid the Sheltons the full amount of the statutorily required no-fault coverage under their automobile insurance policy, $10,000 for PIP benefits and $5000 for additional medical benefits. See § 627.736(1), (1)(a), Fla. Stat. (2002).
The Sheltons then sued USAA for UM benefits. During discovery related to the UM suit, the Sheltons deposed two USAA adjusters and questioned them about the standards employed by the company when considering whether to pay PIP claims as well as the standards for payment of UM claims. USAA filed several motions in limine seeking to preclude any mention of its standard PIP claims practices or its standard for making payments under the PIP coverage provided in its policy. The trial court denied these motions.
This case did not involve questions of coverage or negligence. The sole issue was whether Mrs. Shelton's medical bills were reasonable, necessary, and related to the accident of September 2002.
The Sheltons' counsel first mentioned USAA's PIP payments in his opening statement. Discussing USAA's contention that Mrs. Shelton's bills were unreasonable, unnecessary, and unrelated to the accident, he remarked that the carrier had paid $15,000 in PIP benefits. He also stated that USAA's adjuster would testify that this payment was for reasonable and necessary medical bills. True to his promise, the Sheltons' counsel called USAA's PIP adjuster as a plaintiffs' witness. The adjuster testified that USAA had paid the Sheltons $15,000 under the policy's PIP and medical benefits coverage. She said that payments made under that coverage were "supposed to be" for reasonable and necessary expenses related to the accident. In closing argument, the Sheltons' counsel again mentioned USAA's PIP payments: "The bills in this case came to about $118,000. . . . Now, $15,000 of that was paid by USAA on the grounds that it was reasonable, it was necessary, and it was related to this accident."
No majority opinion in Florida has addressed the issue of whether evidence of a carrier's payment of PIP benefits is admissible *607 as part of the plaintiff's evidence that medical damages sought in a UM suit are reasonable, necessary, or connected with the accident. Several cases, however, have discussed the interaction of these two different and independent coverages in an automobile insurance policy. In Nationwide Mutual Fire Insurance Co. v. Race, 508 So.2d 1276, 1278 (Fla. 3d DCA 1987), approved on other grounds, 542 So.2d 347 (Fla.1989), the Third District rejected Race's argument that payment of PIP benefits collaterally estopped the carrier from denying UM benefits.[1] Similarly, the Florida Supreme Court concluded that an insured's fraudulent conduct in connection with his claim for PIP benefits did not bar him from seeking UM benefits. Flores v. Allstate Ins. Co., 819 So.2d 740, 751 (Fla. 2002). We discern from these cases that actions taken by either party with regard to one coverage, i.e., PIP, do not bind that party with respect to other coverages under an automobile policy, i.e., UM.
Thus, a carrier's payment of PIP benefits is not an admission that its insured's claims for UM benefits are reasonable, necessary, and connected to the accident. But the question remains whether it might be admissible evidence on the issue. See, e.g., Flores v. Allstate Ins. Co., 833 So.2d 172, 174 (Fla. 2d DCA 2002) (sending the case back to the circuit court for a new a trial after remand from the Florida Supreme Court because the district court could not determine whether evidence about Flores's fraud in his PIP claim might be admissible for some limited purpose in his suit for UM benefits). Because of the unique policy considerations underlying PIP coverage, we hold that evidence of an insurer's payment of PIP benefits is not relevant, and therefore is not admissible, to prove the propriety of claimed medical damages in a UM action.[2]
PIP coverage is designed to "provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption." Ivey v. Allstate Ins. Co., 774 So.2d 679, 684 (Fla.2000) (citing Gov't Employees Ins. Co. v. Gonzalez, 512 So.2d 269, 271 (Fla. 3d DCA 1987)). To further this goal, the legislature enacted penalty provisions intended to promote the prompt resolution of PIP claims by imposing several penalties on insurers who pay late. United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 86 (Fla.2001). The Rodriguez court summarized PIP coverage and its penalty provisions as follows:
In sum, the criteria governing payment of benefits and penalties are as follows: (1) an insured may seek the payment of benefits for a covered loss by submitting "reasonable proof" of such loss to the insurer; (2) if the benefits are not paid within thirty days and the insurer does not have reasonable proof that it is not responsible for the payment, the payment is "overdue"; (3) all "overdue" payments shall bear simple interest at a rate of ten percent per year; and (4) whenever an insured files an action for payment of PIP benefits and prevails, the insured is entitled to attorneys' fees.
Id.; see also § 626.736(4)(b), Fla. Stat. (2002).
Under the Florida no-fault coverage, the insurer has a short time in which to decide whether to pay a claim and faces both interest on the claim and attorney's fees if its decision is wrong. In practice, the *608 threat of such penalties, and the requirement that it must have reasonable proof to support its decision, combine to encourage the insurer to make the "swift and virtually automatic" payment of PIP claims envisioned by the PIP law. Thus, a carrier may well be induced to give the insured the benefit of the doubt and to pay a claim it might otherwise have contested. Moreover, basic PIP coverage is limited to $10,000. § 627.736(1). The insurer may conclude that its insured has suffered damages in that amount, but may question whether additional amounts are justified. On the other hand, if the insurer knew that evidence of its PIP payments would haunt it in litigation over a related UM claim, which invariably would involve far more than the sum at stake in the PIP coverage, the insurer would be inclined to give closer scrutiny to PIP claims. This could delay payments of those claims, contrary to the purpose of the PIP statute.
An insurer is in a far different posture under UM coverage. The purpose of the insurance is to provide a source of recovery when the insured has been injured by a tortfeasor with insufficient or no insurance. § 627.727(1), Fla. Stat. (2002). Therefore, in a UM claim the insured must prove that she is legally entitled to recover from the owner or operator of the uninsured or underinsured vehicle. Id. Just as she would in a suit against the tortfeasor, the insured bears the entire burden to prove that her claimed damages were reasonable, necessary, and related to the accident. And, unlike the case in a PIP claim, an insurer's assessment of a UM claim is unrestrained by concerns about statutory deadlines, penalties, or attorney's fees, or by the burden to develop "reasonable proof" that it is not responsible for the claim. See, e.g., § 627.727(8), Fla. Stat. (2002) (providing that a carrier's liability for the insured's attorney's fees under section 627.428 does not apply to a UM claim, unless there is a dispute over coverage). For these reasons, an insurer's payment of PIP benefits in connection with an automobile accident is not relevant to the issue of whether the medical expenses claimed in the insured's UM claim are reasonable, necessary or connected to the accident. It is therefore inadmissible for that purpose. See § 90.401-.402, Fla. Stat. (2002).
Our conclusion in this regard is further bolstered by Judge Torpy's concurrence in Wendell v. United Services Automobile, 881 So.2d 1178, 1180 (Fla. 5th DCA 2004). He addressed the exact issue presented here: whether evidence of the carrier's payment of medical expenses under PIP coverage was admissible to prove its liability for the injury under the UM coverage contained in the policy. Judge Torpy noted that, in his view, the circuit court had correctly ruled the evidence inadmissible because section 90.409, Florida Statutes (2003), "prohibits the introduction of `[e]vidence of furnishing, or offering, or promising to pay medical or hospital expenses. . . to prove liability for the injury or accident.'" Id. (Torpy, J., concurring). We agree, and this reasoning provides another basis for our holding that the trial court erred in permitting the Sheltons to introduce evidence about USAA's payment of PIP benefits in support of their claim for UM benefits.
But, having found error, we conclude that it was harmless in this case. The trial court cautioned the Sheltons' counsel to be circumspect in his presentation of the evidence about the PIP payments, so as not to make it a feature of the trial. Our careful review of the trial record easily convinces us that this topic was not a feature of the trial. Rather, the focus of the trial centered on whether Mrs. Shelton had herniation in two spinal discs *609 as a result of the accident, thus necessitating surgery. The jury heard more than enough evidence to support the Sheltons' position. Their medical witnesses  Mrs. Shelton's treating physician, a board certified orthopedic surgeon, and a radiologist  all testified that her MRI showed disc herniations, that the accident either caused the condition or aggravated a previously existing condition, and that surgery was necessary.
USAA's expert neurosurgeon had reviewed Mrs. Shelton's medical records and concluded that the only injury she suffered in the accident was a sprained neck that required only a few weeks of conservative treatment. His opinion that Mrs. Shelton's surgery was not necessary or related to the accident rested heavily on his insistence that her MRI did not show that she had herniated discs. But USAA next offered the testimony of its expert radiologist, who confirmed that disc herniations were apparent in the MRI, thus significantly undermining the central premise of USAA's defense.
After our examination of the entire case, it does not appear that the few references to PIP coverage reasonably affected USAA's substantial rights at trial, or resulted in a miscarriage of justice. See Gen. Motors Corp. v. McGee, 837 So.2d 1010, 1036 (Fla. 4th DCA 2003); Centex-Rooney Constr. Co. v. Martin County, 706 So.2d 20, 26 (Fla. 4th DCA 1997); see also § 59.041, Fla. Stat. (2005). Accordingly, we affirm the judgment in favor of the Sheltons.
Affirmed.
FULMER, C.J., and DEMERS, DAVID A., Associate Judge, Concur.
NOTES
[1] Race did not raise the estoppel issue in the Florida Supreme Court. As such, the court had no reason to address it. Race, 542 So.2d at 351.
[2] We note that evidence of the payment of PIP benefits must be introduced at trial for purposes of a setoff defense. Caruso v. Baumle, 880 So.2d 540, 543 (Fla.2004).