971 So.2d 929 (2007)
GEICO GENERAL INS. CO., et al., Petitioners,
v.
Leonard H. BERNER, et al., Respondents.
Nos. 3D07-560, 3D07-440.
District Court of Appeal of Florida, Third District.
December 19, 2007.
Kubicki Draper and Maria Kayanan, Miami; Fowler White Boggs Banker and Charles W. Hall and Mark D. Tinker, St. Petersburg; Timothy W. Harrington, Miami; Eduardo J. Serer, for petitioners.
Deutsch & Blumberg and James C. Blecke, Miami, for respondents.
Before SHEPHERD, CORTIÑAS, and ROTHENBERG, JJ.

On Motion for Rehearing
SHEPHERD, J.
We grant the Petitioner's, Juan Daniel Hernandez, Motion for Rehearing, withdraw our September 12, 2007 opinion, and substitute the following opinion in its place.
Petitioners, Government Employees Insurance Company (GEICO) and Juan Daniel Hernandez, the defendants below, seek *931 certiorari review of a trial court order obtained by respondent, Leonard H. Berner, GEICO's insured and the plaintiff below, limiting GEICO and Hernandez's choice of defense medical expert in an upcoming automobile accident trial to the doctor assigned to examine Berner and evaluate his claim for personal injury protection benefits under the policy. The subject of the trial will not be whether Berner has received all personal injury protection benefits due and payable to him under his GEICO policy, but rather whether Hernandez is responsible to Berner as a third-party tortfeasor, and whether GEICO must afford uninsured motorist benefits to Berner under the policy. We grant the petitions for writ of certiorari and quash the order under review.
This case arises out of a motor vehicle accident in which Hernandez struck Berner as he walked across Wayne Avenue in Miami Beach. Hernandez is alleged to be uninsured or underinsured. After the accident, Berner submitted a claim for personal injury protection benefits to GEICO. GEICO requested that Berner submit to a physical examination pursuant to the personal injury protection coverage section of the policy. Berner was examined by Dr. Martin Mendelssohn, an orthopedic specialist selected by a third-party vendor or agency that supplies services of this type for the benefit of companies like GEICO. The precise relationship of the vendor to GEICO is not well developed in the record.
Thereafter, Berner filed the present action against Hernandez and GEICO. Two months into the litigation, GEICO served a request for examination of Berner by another orthopedic specialist pursuant to Florida Rule of Civil Procedure 1.360(a)(1)(A), which authorizes such an examination when the physical condition of a party is in controversy and there is "good cause" for the examination. Fla. R. Civ. P. 1.360(a)(2). Berner objected to GEICO's request, urging an absence of good cause because GEICO already had its examination. Hernandez countered with his own request for medical examination pursuant to Rule 1.360(a)(1)(A). Berner objected to Hernandez's request on the ground that Hernandez and GEICO shared a commonality of interests in the damage phase of the litigation. The trial court agreed with Berner, and ordered that Mendelssohn serve as the defense medical expert for both GEICO and Hernandez, conditioned upon either being able to subject Berner to a further examination by Mendelssohn. GEICO and Hernandez have separately petitioned for review of this order as it pertains to their respective interests. We have consolidated their petitions for purposes of this proceeding.
For its account, GEICO contends the trial court impermissibly and without legal justification preempted its choice of expert medical witness by forcing it to use Dr. Mendelssohn simply because he examined the plaintiff, pre-suit, in connection with his personal injury protection claim, through assignment by an agency and not by GEICO or its counsel's choice. GEICO further argues that if we do not correct this error now, the trial court decision will cause it to suffer material harm throughout the remainder of the proceeding below, for which there will be no remedy on appeal. See Somarriba v. Ali, 941 So.2d 526, 528 (Fla. 3d DCA 2006) (explaining that should the order precluding the plaintiff from taking a third party's deposition stand, "on final appeal it would be difficult for [the court] to determine how his testimony would have affected the outcome of this case[]"); Sabol v. Bennett, 672 So.2d 93, 94 (Fla. 3d DCA 1996) (recognizing that an order "which has the effect of denying a party the right to depose an alleged material witness inflicts the type of *932 harm that cannot be corrected on appeal since there would be no practical way to determine after judgment what the testimony would be or how it would affect the result[ ]") (internal quotation marks omitted); Ruiz v. Steiner, 599 So.2d 196, 197 (Fla. 3d DCA 1992) ("Certiorari review of orders denying discovery has been granted where it was found that the injury caused by the order was irreparable."). We agree.
Assuming the existence of "good cause" within the meaning of Florida Rule of Civil Procedure 1.360(a)(2)not usually open to substantial debate in a personal injury actionthe defendant has the right to have the complainant examined by a qualified medical expert or experts to defend itself. In such a circumstance, Florida Rule of Civil Procedure 1.360(a)(1)(A) expressly allows the defendant to select the examining expert. The Rule states:
(a) Request; Scope.
(1) A party may request any other party to submit to, or to produce a person in that other party's custody or legal control for, examination by a qualified expert when the condition that is the subject of the requested examination is in controversy.
(A) When the physical condition of a party or other person under subdivision (a)(1) is in controversy, the request may be served on the plaintiff without leave of court after commencement of the action, and on any other person with or after service of the process and initial pleading on that party. The request shall specify a reasonable time, place, and manner, conditions, and scope of the examination and the person or persons by whom the examination is to be made.
Fla. R. Civ. P. 1.360(a)(1)(A) (emphasis added); see also State Farm Mut. Auto. Ins. Co. v. Shepard, 644 So.2d 111 (Fla. 2d DCA 1994) (granting certiorari and quashing order requiring State Farm, the uninsured motorist carrier, to use a particular physician); Toucet v. Big Bend Moving & Storage, 581 So.2d 952 (Fla. 1st DCA 1991) (concluding the defendant was entitled to have his own chosen expert conduct physical examination pursuant to Florida Rule of Civil Procedure 1.360, when all previous examinations had been performed by experts selected by the plaintiff). The purpose of Rule 1.360 is to produce an even playing field at trial. In the usual personal injury case, one or more medical practitioners already will have examined and treated the claiming plaintiff. The Rule simply allows the defense the opportunity to respond with its own experts if it so desires.
Berner nevertheless argues GEICO has been afforded all ability to respond as required by Rule 1.360(a)(2) because Berner already acquiesced to an examination at GEICO's behest pursuant to the personal injury protection coverage section of his automobile insurance policy. We disagree. There is a substantial legal and practical difference between an insurer's evaluation of a personal injury protection benefit claim and a claim for uninsured (or underinsured) motorist benefits. The coverages are different, the claims focus is different, and the economics of the claims handling processes is different.
The purpose of personal injury protection coverage is to provide the insured with "swift and virtually automatic payment so that the insured may get on with his life without undue financial interruption." Ivey v. Allstate Ins. Co., 774 So.2d 679, 683-84 (Fla.2000) (quoting GEICO v. Gonzalez, 512 So.2d 269, 271 (Fla. 3d DCA 1987)). Payments are to be made if the expenses incurred were "reasonable, related and necessary." USAA Cas. Ins. Co. v. *933 Shelton, 932 So.2d 605, 606 (Fla. 2d DCA 2006). Moreover, the basic personal injury protection coverage is a modest $10,000. § 627.736(1), Fla. Stat. (2006). Because substantial penalties can be imposed against an insurer who fails to pay a modest-sized personal injury protection benefit claim within thirty days without "reasonable proof" that it is not payable, insurers sometimes are motivated to give insureds the benefit of the doubt by paying a personal injury protection benefit claim it otherwise might have contested. Shelton, 932 So.2d at 607-08.
In contrast, the policy behind uninsured and underinsured motorist coverage is to treat the insured the same as if the tortfeasor had been financially responsible to the limit of coverage purchased by the insured. Id. at 608 ("The purpose of the [uninsured motorist] insurance is to provide a source of recovery when the insured has been injured by a tortfeasor with insufficient or no insurance."). Not only are the financial stakes almost always higher, but also more exacting, traditional principles of "causation" and "foreseeability" are in play. Nationwide Mut. Fire Ins. Co. v. Race, 508 So.2d 1276, 1279 (Fla. 3d DCA 1987). For these reasons, personal injury protection benefits examinations are likely to be more cursory than might otherwise occur,[1] and frequently are conducted by less-credentialed or experienced medical professionals. The facts of this case illustrate the point. Dr. Mendelssohn's practice is almost entirely that of a consultant to the insurance industry, and the scope of the charge given him by the retaining third-party vendor expressly excluded traditional "causation" and "foreseeability" determinations.
Under these circumstances, we conclude that to restrict an insurer's choice of defense medical expert to a physician consulted for a reason other than that for which the examiner was retained is inconsistent with the purpose and plain language of Rule 1.360(a)(1)(A). In addition, if we were to approve the trial court decision in this case, we would act contrary to the interests of the insurance consuming public, who, in a rational economic world, *934 would be apt to find their insurers ordering more extensive and expensive personal injury protection benefits examinations so as not to have their hands tied from needed discovery at a later date. We are loath to thus insert ourselves into the insurance market place. See Mayer v. Ill. N. Ry., 324 F.2d 154, 156 (7th Cir.1963) (holding that for both practical and economic reasons, it generally is permissible for parties to conduct more than one examination when, as here, the first one was not adequate or complete); see also Strasser v. Prudential Ins. Co., 1 F.R.D. 125 (W.D.Ky.1939).
We also conclude the trial court departed from the essential requirements of law by failing to afford Hernandez the benefit of Florida Rule of Civil Procedure 1.360. For the foregoing reasons, we grant the petitions, quash the order under review, and remand for further proceedings consistent herewith.
NOTES
[1] Notably, the contractual uninsured motorist coverage pre-suit medical examination provision is also more exacting than the parallel provision in the personal injury benefit coverage section of the policy:

Section II  Personal Injury Protection Section IV  Uninsured Motorists
 Coverage
* * * * * * * *
CONDITIONS CONDITIONS
* * * * * * * *
3. Proof of Claim . . . 4. Proof of Claim . . .
As soon as practicable the person As soon as possible, the insured or
making the claim shall give to us other person making claim must give
written proof of claim, under oath us written proof of claim, under oath
if required, which may include full if required.
particulars of the nature and extent
of the injuries and treatment * * * *
received and contemplated, and such
other information as may assist us in The injured person will submit to
determining the amount due and examination by doctors chosen by us,
payable. Such person shall submit at our expense, as we may reasonably
to mental or physical examinations at require.
our expense when and as often as we
may reasonably require. . . .