WELLS, Chief Judge.
State Farm Mutual Automobile Insurance Company appeals from a final judgment in William Swindoll’s favor on his uninsured motorist (UM) benefits claim. Because Swindoll was permitted to make the payment of personal injury protection (PIP) benefits and the standard for the payment of such benefits a feature of the trial below, we reverse and remand for a new trial.
On May 14, 2006, Swindoll was involved in an automobile accident, allegedly injuring his neck. Following the accident, he sought accident-related treatment from a chiropractor and from his primary care physician, submitting his medical bills for his treatment to State Farm, his insurer. *248 State Farm thereafter paid $10,000 in PIP and an additional $5000 in MedPay benefits to Swindoll. It refused, however, to pay further sums under the UM portion of his policy, claiming that the medical treatment for which Swindoll sought payment did not stem from injuries incurred in the automobile accident.
In Swindoll’s ensuing action to recover UM benefits, State Farm moved in limine to preclude Swindoll from adducing testimony that payment of PIP benefits rested on a determination that the medical services for which these benefits had been paid were “reasonable, necessary, or connected to the accident.” State Farm also argued that no testimony was appropriate regarding payment of MedPay benefits because the trial court, not the jury, was required to reduce any damage award by the amount of these benefits. While the trial court initially agreed, ruling that only testimony that these benefits had been paid would be permitted, at trial, the court below allowed Swindoll’s counsel to “walk” a State Farm claims adjuster through the instant policy and the interaction between PIP, MedPay and UM coverages provided therein. With respect to PIP benefits, Swindoll’s counsel was allowed to repeatedly elicit testimony from State Farm’s claims adjuster that PIP benefits were payable for those medical services that were reasonable, necessary and related to the accident involved. Having established this fact, Swindoll’s counsel then suggested that UM benefits were payable upon exhaustion of PIP and MedPay benefits. Finally, Swindoll’s lawyer was allowed to question the adjuster about every bill submitted for payment, as well as each payment made, to Swindoll by State Farm under the policy’s PIP and MedPay provisions.
The jury ultimately found that the accident at issue was a legal cause of Swin-doll’s injury but that he suffered no permanent injury. Swindoll was awarded damages for past medical expenses in the amount of $23,505, which following reduction for payment of PIP and MedPay benefits, was reduced to a total of $8505. State Farm appeals from this judgment.

1. Evidence of payment of PIP benefits to Swindoll

The Florida Supreme Court has held that in cases where a jury is the trier of fact “when the plaintiff introduces evidence of damages that would be covered by PIP benefits ... evidence of PIP benefits [must be] introduced as well ... ‘to prevent a plaintiff from obtaining a double recovery.’ ” Caruso v. Baumle, 880 So.2d 540, 545 (Fla.2004) (quoting McKenna v. Carlson, 771 So.2d 555, 558 (Fla. 5th DCA 2000)); see also § 627.736(3), Fla. Stat. (2009).[1] As our sister court in USAA Casualty Insurance Co. v. Shelton, 932 So.2d 605 (Fla. 2d DCA 2006), correctly held, this mandate does not make evidence regarding the standard for payment of, or an insurer’s payment of, PIP benefits relevant *249 when determining the propriety of payment of UM benefits:
No majority opinion in Florida has addressed the issue of whether evidence of a carrier’s payment of PIP benefits is admissible as part of the plaintiffs evidence that medical damages sought in a UM suit are reasonable, necessary, or connected with the accident. Several cases, however, have discussed the interaction of these two different and independent coverages in an automobile insurance policy. In Nationwide Mutual Fire Insurance Co. v. Race, 508 So.2d 1276, 1278 (Fla. 3d DCA 1987), approved on other grounds, 542 So.2d 347 (Fla.1989), the Third District rejected Race’s argument that payment of PIP benefits collaterally estopped the carrier from denying UM benefits. Similarly, the Florida Supreme Court concluded that an insured’s fraudulent conduct in connection with his claim for PIP benefits did not bar him from seeking UM benefits. Flores v. Allstate Ins. Co., 819 So.2d 740, 751 (Fla.2002). We discern from these cases that actions taken by either party with regard to one coverage, i.e., PIP, do not bind that party with respect to other coverages under an automobile policy, i.e., UM.
Thus, a carrier’s payment of PIP benefits is not an admission that its insured’s claims for UM benefits are reasonable, necessary, and connected to the accident. But the question remains whether it might be admissible evidence on the issue. See, e.g., Flores v. Allstate Ins. Co., 833 So.2d 172, 174 (Fla. 2d DCA 2002) (sending the case back to the circuit court for a new a trial after remand from the Florida Supreme Court because the district court could not determine whether evidence about Flores’s fraud in his PIP claim might be admissible for some limited purpose in his suit for UM benefits). Because of the unique policy considerations underlying PIP coverage, we hold that evidence of an insurer’s payment of PIP benefits is not relevant, and therefore is not admissible, to prove the propriety of claimed medical damages in a UM action.
Id. at 606-07 (footnotes omitted).
In this case, Swindoll was allowed, over continuing objection, to introduce a substantial amount of testimony regarding the standard applied to payment of PIP benefits and the actual payment of PIP benefits by State Farm. This testimony could only have been intended to convince the jury that State Farm’s payment of PIP benefits constituted an admission that . Swindoll was entitled to recover UM benefits because State Farm had already determined that the services for which payment was sought were reasonable, necessary and related to the accident at issue.
Based on our review of the record, we conclude that this wholly unnecessary[2] and irrelevant testimony was so prejudicial that it destroyed the jury’s impartiality. For this reason alone a new trial is warranted.

2. Evidence of payment of MedPay benefits to Swindoll

We also note that on remand no testimony need be adduced regarding State Farm’s payment of MedPay benefits to Swindoll. As the Florida Supreme Court concluded in Allstate Insurance Co. v. Rudnick, 761 So.2d 289, 291 (Fla.2000), MedPay benefits “are not the equivalent of *250 PIP benefits for purposes of section 627.736(3),” but are instead “a collateral source to which the general collateral source statute [section 768.76(1) of the Florida Statutes] is applicable.” Thus, the trial court, rather than the jury, is to offset a UM damage award by the amount of paid MedPay benefits. This makes testimony regarding MedPay benefits irrelevant. Id. at 292-93; see also Caruso, 880 So.2d at 544 (stating that, “under section 768.76(1), the court reduces the jury award by the amount of collateral source benefits”). Consequently, we see no reason for any testimony on this issue on remand.[3]
Accordingly, the final judgment entered below is reversed with this matter remanded for a new trial.

. Section 627.736(3) provides, in relevant part:
An injured party who is entitled to bring suit under the provisions of ss. 627.730-627.7405, or his or her legal representative, shall have no right to recover any damages for which personal injury protection benefits are paid or payable. The plaintiff may prove all of his or her special damages notwithstanding this limitation, but if special damages are introduced in evidence, the trier of facts, whether judge or jury, shall not award damages for personal injury protection benefits paid or payable. In all cases in which a jury is required to fix damages, the court shall instruct the jury that the plaintiff shall not recover such special damages for personal injury protection benefits paid or payable.

. Here, the Supreme Court’s mandate in Caruso could easily have been dispatched either by stipulation (since the parties do not dispute that either PIP and MedPay benefits were paid or the amount of those payments) or by a question or two as to whether any benefits had already been paid by State Farm and the amount of same.

. In light of our ruling herein, we see no need to address State Farm's argument regarding the trial court’s ruling with respect to the introduction of Swindoll's medical records. We note, however, that in light of the parties’ stipulation as to the authenticity of these documents, there appears to be no basis for excluding them simply because some of the contents are not clearly legible.