81 So.3d 538 (2012)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
Twyman E. BOWLING and Terry Bowling, Appellees.
No. 2D10-1505.
District Court of Appeal of Florida, Second District.
February 10, 2012.
*539 Anthony J. Russo and Ezequiel Lugo of Butler Pappas Weihmuller Katz Craig LLP, Tampa, and Mark S. Ramey of Ramey & Kampf, P.A., Tampa, for Appellant.
Peter W. van den Boom, Bradford L. Stewart, and David F. Anderson of Frost van den Boom & Smith, P.A., Bartow, for Appellees.
MORRIS, Judge.
The appellee's motion for rehearing en banc is denied. The appellee's motion for clarification is granted in part and denied in part. The opinion dated July 8, 2011, is withdrawn and the following opinion is substituted therefor, clarifying that a new trial should be held on the issue of damages. No further motions for rehearing or clarification shall be considered.
State Farm Mutual Automobile Insurance Company appeals a final judgment entered after a jury verdict in favor of its insureds, Twyman Bowling and Terry Bowling, in the amount of their uninsured motorist (UM) policy limits. On appeal, State Farm raises three evidentiary issues. We see no error in the trial court's rulings on two of the issues, but we find merit in the third issue raised by State Farm. Accordingly, we reverse the final judgment and remand for a new trial on damages.
Mr. Bowling filed suit against State Farm seeking coverage under the UM provision of his policy for injuries he received in an automobile accident. Mrs. Bowling filed a claim for loss of consortium. The case proceeded to a jury trial, after which the jury returned a verdict in favor of the Bowlings for $944,154.50. Upon motion by State Farm, the trial court reduced the judgment to the UM policy limits of $100,000.
State Farm's witness list indicated that Debra Pacha had been retained by State Farm as an expert witness to testify to the reasonableness of the charges submitted for the medical treatment provided to Mr. Bowling. Ms. Pacha testified at her deposition that she was asked to testify "concerning the reasonableness of charges for medical treatment rendered to" Mr. Bowling. She testified that she compared the *540 bills to the medical treatment records and found "extreme abuse in regards to the coding, billing[,] and medical record documentation" of four of Mr. Bowling's main medical care providers. She testified that as for those four providers, "there is absolutely nothing within that documentation that is supportive or representative of any of the billed procedures that I have reviewed." Her report also indicated that she reviewed $278,000 in medical bills and found that $111,000 in charges did not have any supporting medical codes.
The Bowlings filed a motion to exclude Ms. Pacha's testimony, arguing that it would not assist the jury in determining whether Mr. Bowling's bills are reasonable, that Ms. Pacha was not qualified to render an opinion as to the reasonableness of the bills, and that in her deposition, she failed to give any opinion as to the reasonableness of the bills. Prior to trial, the trial court granted the Bowlings' motion by written order, finding that "the testimony of the witness will not assist the jury in determining whether Mr. Bowling's medical bills are reasonable" and that Ms. Pacha was not "qualified to render an opinion as to the reasonableness of those medical bills."
As in a suit for personal injury, a plaintiff seeking UM coverage must demonstrate that his or her medical expenses are reasonable and necessary. See USAA Cas. Ins. Co. v. Shelton, 932 So.2d 605, 608 (Fla. 2d DCA 2006) ("Just as she would in a suit against the tortfeasor, the insured [seeking UM recovery] bears the entire burden to prove that her claimed damages were reasonable, necessary, and related to the accident."); Albertson's, Inc. v. Brady, 475 So.2d 986, 988 (Fla. 2d DCA 1985) ("It is well established that the plaintiff in a personal injury suit has the burden to prove the reasonableness and necessity of medical expenses." (citing Shaw v. Puleo, 159 So.2d 641 (Fla.1964))). To meet this burden, the Bowlings used a one-page summary of Mr. Bowling's medical bills and Mr. Bowling testified that the charges were reasonable. State Farm attempted to refute this evidence with the testimony of Ms. Pacha.
On appeal, State Farm argues that the trial court erred in excluding the testimony of Ms. Pacha as State Farm's medical billing and coding expert. We agree. Section 90.702, Florida Statutes (2009), provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
"This section requires the court to make two preliminary determinations: (1) whether the subject matter will assist the trier of fact in understanding the evidence or in determining a disputed fact[ ] and (2) whether the witness is adequately qualified to express an opinion on the matter." Chavez v. State, 12 So.3d 199, 205 (Fla. 2009).
As part of its defense that Mr. Bowling fabricated or exaggerated his injuries, State Farm argued that Mr. Bowling's medical providers fabricated or exaggerated the medical care necessary for his alleged injuries. Ms. Pacha's testimony that the bills did not correlate to the treatment in the medical records was relevant to prove this defense. Her testimony regarded a technical matter of which the jury did not have basic knowledge. See United States v. Diaz, No. 07-20398-CR, 2008 WL 906725, at *6 (S.D.Fla. Mar. 28, *541 2008) (noting that medical billing codes are beyond the knowledge of an ordinary juror); see also Johnson v. State, 393 So.2d 1069, 1072 (Fla.1980) (holding that expert opinion testimony must relate to a "disputed issue [that] is beyond the ordinary understanding of the jury"). Therefore, the subject matter of Ms. Pacha's testimony would have assisted the jury in determining whether Mr. Bowling's medical bills, on which he based his claim for damages, accurately reflected the treatment he was documented to have received. This issue was directly relevant to whether Mr. Bowling's claimed medical expenses were reasonable and necessary.
As to Ms. Pacha's qualifications, it is clear from her deposition that she has specialized knowledge and training to express an opinion on whether the medical bills were properly coded and whether they correspond to the medical records documenting the purported treatment. See § 90.702; Charles Ehrhardt, Florida Evidence § 702.1, at 677-78 (2009 ed.) (noting that definition of expert in section 90.702 "applies not only to persons with scientific or technical knowledge but also to anyone with any specialized knowledge"). Ms. Pacha took multiple education courses in the field of coding, she passed a national board examination, and she is a licensed Registered Medical Coder, which allows "the auditing of the documentation, billing[,] and coding" of physician offices, hospitals, and ambulatory surgical centers. She attained the status of a Diplomate of the American Board of Forensic Examiners after taking an examination and teaching education courses. Moreover, she gained professional experience analyzing and reviewing medical coding for various clients such as the FBI, the State Attorney's Office, Federal Express, Wal-Mart, the insurance industry, and attorneys both plaintiff and defense. Therefore, Ms. Pacha's training and experience qualify her as an expert in medical billing coding.
In granting the Bowlings' motion to exclude Ms. Pacha's testimony, the trial court found that Ms. Pacha is not qualified to give an expert opinion regarding whether the bills were reasonable. This was error. While Ms. Pacha does not have the necessary medical background to render an opinion on whether the medical care allegedly provided to Mr. Bowling was reasonable, she does have the requisite skill and training to render an opinion on whether the bills submitted by his medical providers accurately reflect the care documented in the medical records of those same providers. This was directly relevant to the amount of damages claimed by the Bowlings.
We recognize that a trial court has broad discretion in ruling on the admissibility of expert witness testimony, see McWatters v. State, 36 So.3d 613, 629 (Fla. 2010), but "[o]ne of a party's most important due process rights is the right to call witnesses," Keller Indus. v. Volk, 657 So.2d 1200, 1202-03 (Fla. 4th DCA 1995). "A trial court should only exclude witnesses under the most compelling of circumstances," Keller Indus., 657 So.2d at 1203, especially "when the witness sought to be excluded is a party's only witness or one of the party's most important witnesses because if the witness is stricken, that party will be left unable to present evidence to support his or her theory of the case," Pascual v. Dozier, 771 So.2d 552, 554 (Fla. 3d DCA 2000). Ms. Pacha was State Farm's only witness who could testify in support of State Farm's defense that the medical bills submitted for recovery by Mr. Bowling were inaccurate and therefore unreasonable. This testimony was especially important because at least two of Mr. Bowling's medical providers *542 admitted at trial that certain bills included items that should not have been billed.
The trial court abused its discretion in excluding the testimony of Ms. Pacha, and we reverse the final judgment and remand for a new trial on damages consistent with this opinion.
Reversed and remanded.
KELLY, J., Concurs.
CRENSHAW, J., Concurs in part and dissents in part with opinion.
CRENSHAW, Judge, Concurring in part and dissenting in part.
In this case of first impression, State Farm seeks to introduce the expert testimony of Debra Pacha, a former x-ray technician who became licensed in the forensic examination of medical record coding and billing. Because Ms. Pacha's testimony would have been collateral and did not consist of specialized knowledge requiring the use of an expert, I conclude the trial court did not abuse its discretion by excluding her testimony. Thus, I respectfully dissent from this part of the majority's holding. I concur with the majority in all other respects.
State Farm sought to introduce Ms. Pacha's testimony to address alleged billing discrepancies among four different healthcare providersUniversity Community Hospital Carrollwood (UCHC), Rose Radiology Centers, Inc. (Rose Radiology), Nucci Spine Institute & Orthopedics Institute (Nucci Spine Institute), and Dr. Robert Nuccibut primarily focused on the billing practices of Dr. Nucci, an orthopedic surgeon at Nucci Spine Institute specializing in spinal injuries. Mr. Bowling received treatment from Dr. Nucci for almost two years, and in exchange for Dr. Nucci's services, Mr. Bowling signed a letter of protection in which he assigned his insurance benefits and any and all causes of action available to him under the policy to Dr. Nucci.
At trial, the Bowlings presented Dr. Nucci's testimony via videotaped deposition. Dr. Nucci testified about Mr. Bowling's injuries and the surgeries performed in treating those injuries. Though State Farm cross-examined another treating physician about the amounts and the reasonableness of the services he rendered to Mr. Bowling, it asked Dr. Nucci only limited questions about any discrepancies between services he performed and the services he billed. State Farm did not ask medical providers affiliated with UCHC or Rose Radiology about their billing practices. And State Farm did not ask Mr. Bowling about what services were performed on him and if the services received matched the services for which he was billed.[1] Further, the Bowlings introduced the one-page synopsis of Mr. Bowling's medical bills into evidence without objection from State Farm.
The majority is correct that in accordance with this court's determination in USAA Casualty Ins. Co. v. Shelton, 932 So.2d 605, 608 (Fla. 2d DCA 2006), Mr. Bowling was required to prove under section 627.727, Florida Statutes (2004), that the damages in his uninsured motorist (UM) claim "were reasonable, necessary, and related to the accident." Yet our focus in Shelton was whether evidence of an *543 insurer's payment of personal injury protection (PIP) benefits was relevant to prove the reasonableness and necessity of the insured's UM claim. Id. We determined that the payment of PIP benefits was not relevant and therefore inadmissible, but also concluded the introduction of the PIP payments was harmless error because it did not become a feature of the trial. Id. Shelton essentially resolved a similar question raised in this court's earlier holding in Flores v. Allstate Insurance Co., 833 So.2d 172 (Fla. 2d DCA 2002), in which we noted that a secondary issue of a PIP claim in a UM action could prejudicially outweigh any probative value under section 90.403.
Here, State Farm wanted to use Ms. Pacha's testimony to insinuate that Mr. Bowling's medical providers acted fraudulently in their treatment of Mr. Bowling. Though State Farm's allegations are serious and troublesome, I believe Ms. Pacha's testimony would improperly shift the focus of the trial away from Mr. Bowling's actual allegations under chapter 627 to the conduct of third-party providers who acted independently of Mr. Bowling.[2] And because Ms. Pacha could only testify as to whether the medical providers properly billed Mr. Bowling but not to the reasonableness of the charges for treatment rendered to him, a questionable billing code entered by a third-party amounted to an irrelevant, collateral issue.[3] Of the $318,303.10 in claimed medical expenses that were calculated after deducting insurance payments and adjustments, only about a third of the amount$111,938.34was not assigned to an appropriate code. Ms. Pacha did not opine that the providers' description of the $111,938.34 in services meant that the services were not rendered, and she did not calculate an amount of reasonable charges that Mr. Bowling should have incurred.
Alternatively, even if the majority is correct that the evidence was relevant because it would tend to show whether Mr. Bowling's claimed medical expenses were reasonable and necessary, the admission of evidence involving conduct that Mr. Bowling took no part in would still be unduly prejudicial. See, e.g., United States v. Dennis, 625 F.2d 782, 796-97 (8th Cir. 1980) ("Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues."). Given the majority opinion's broad language, I am concerned our holding is a blanket authorization for the regular introduction of billing code experts at trial to contest the reasonableness of injuries. Such a practice would make a third-party's billing practices the focus of the trial rather than the questions of coverage,[4] negligence by the uninsured motorist, and the extent of the plaintiff's injuries sustained in the accident that are typically raised under section 627.727.
Further, I disagree with the majority's determination that the trial court abused its discretion by excluding Ms. Pacha because *544 she was the only witness who could testify that Mr. Bowling's medical bills were inaccurate. "It is well settled that the determination of a witness's qualifications to express an expert opinion is peculiarly within the discretion of the trial judge, whose decision will not be reversed absent a clear showing of error." Anderson v. State, 863 So.2d 169, 179 (Fla. 2003) (emphasis added).
Ms. Pacha was State Farm's only witness to contest Mr. Bowling's medical bills because State Farm purposefully made her its only witness. State Farm had several other means to show that the codes in the medical records did not match the procedures billed. For example, State Farm could have shown the bills to each medical provider in question and conducted a detailed inquiry about each disputed charge. State Farm could have had the medical providers' staff testify as to their billing practices and knowledge of entering the codes to bill Mr. Bowling. State Farm could have gone over each medical bill with Mr. Bowling if it believed the charges were unsupported. See Garrett v. Morris Kirschman & Co., 336 So.2d 566, 571 (Fla. 1976) (concluding plaintiff's testimony "made it a question for the jury to decide, under proper instructions, whether these bills represented reasonable and necessary medical expenses"); see also Albertson's, Inc. v. Brady, 475 So.2d 986, 988 (Fla. 2d DCA 1985) (holding jury's finding of damages were unsupported where plaintiff's testimony did not associate each medical bill with injuries resulting from the accident). Above all, State Farm could have objected to the Bowlings' introduction of its one-page summary of Mr. Bowling's medical bills. Hence, this case is not like Pascual v. Dozier, 771 So.2d 552, 554 (Fla. 3d DCA 2000), because State Farm had alternate ways to present evidence supporting its theory of the case and its failure to prevail on its trial strategy does not constitute "clear legal error" by the trial court.
Finally, the majority ignores the trial court's discretion to determine whether Ms. Pacha was qualified to express an expert opinion. Ms. Pacha stated in her deposition that State Farm asked her "to simply look at the billing, coding[,] and documentation and to determine whether the billed procedures are coded appropriately and the documentation was there to support it." The fact that the coding on some of the medical bills did not match the treatment performed is not something that requires the specialized knowledge of an expert witness to decipher in this case.[5]See § 90.702; see also Dungan v. Ford, 632 So.2d 159, 163 (Fla. 1st DCA 1994) (determining "`reasonableness or necessity' can be established by lay testimony . . . involv[ing] a question of necessity from the perspective of the injured party, rather than from the perspective of a medical *545 expert"). As previously mentioned, there are several other methods in which the discrepancies could have been shown without Ms. Pacha's testimony. And, as the majority notes, Ms. Pacha lacks the necessary medical background to render an opinion on what I believe is the germane issuewhether the medical care provided to Mr. Bowling was reasonable. Thus, Ms. Pacha's purported expert testimony was properly excluded because "the facts testified to are of such a nature as not to require any special knowledge or experience in order for the jury to form conclusions from the facts." Johnson v. State, 393 So.2d 1069, 1072 (Fla.1980). Accordingly, I would affirm the trial court's decision to exclude Ms. Pacha's testimony.
NOTES
[1] At the appellate oral argument, State Farm contended it could not ask Mr. Bowling about the exact medical services he received because he did not have a vested interest in the amount owed due to his billing arrangement with Dr. Nucci. Yet State Farm did not raise this argument before the trial court. And, while the agreement between Mr. Bowling and Dr. Nucci is not in the record, Dr. Nucci's testimony did not reflect that Mr. Bowling would be absolved of any financial obligation if he did not receive an award for his injuries.
[2] The parties do not allege that Mr. Bowling was involved in, or would profit from, any of the billing code discrepancies.
[3] test for determining whether a matter is collateral or irrelevant "is whether the proposed testimony can be admitted for any purpose independent of the contradictions."
"Two types of evidence pass this test: (1) facts relevant to a particular issue; and (2) facts which discredit a witness by pointing out the witness' [sic] bias, corruption, or lack of competency."
Foster v. State, 869 So.2d 743, 745 (Fla. 2d DCA 2004) (quoting Lawson v. State, 651 So.2d 713, 715 (Fla. 2d DCA 1995)) (internal citations omitted).
[4] This case did not involve a question of coverage.
[5] Though the majority cites to U.S. v. Diaz, No. 07-20398-CR, 2008 WL 906725 (S.D.Fla. Mar. 28, 2008), for the proposition that medical billing codes are beyond the knowledge of an ordinary juror, I find Diaz is not pertinent to the underlying issues in this case. Diaz involved two defendants who were charged with numerous offenses, including thirty-two counts of healthcare fraud. Id. at *1. The government sought the expert testimony of a registered nurse practitioner who analyzed a sample of claims packets taken from more than 400 boxes of records from the defendants' billing company and identified categories in the records which she believed contained fraudulent characteristics. Id. at *2. Hence, the nurse's expert testimony was needed to cull through thousands of pages of records and explain the medical billing codes as it related to the defendants' records and the charges of fraud against the defendants. Id. at *6. In contrast, Ms. Pacha's testimony as a medical billing and coding expert merely would have shown that the billing records did not match and would not assist the jury in understanding the facts of the case.