CRENSHAW, Judge,
Concurring in part and dissenting in part.
In this case of first impression, State Farm seeks to introduce the expert testimony of Debra Pacha, a former x-ray technician who became licensed in the forensic examination of medical record coding and billing. Because Ms. Pacha’s testimony would have been collateral and did not consist of specialized knowledge requiring the use of an expert, I conclude the trial court did not abuse its discretion by excluding her testimony. Thus, I respectfully dissent from this part of the majority’s holding. I concur with the majority in all other respects.
State Farm sought to introduce Ms. Pa-cha’s testimony to address alleged billing discrepancies among four different healthcare providers — University Community Hospital Carrollwood (UCHC), Rose Radiology Centers, Inc. (Rose Radiology), Nucci Spine Institute & Orthopedics Institute (Nucci Spine Institute), and Dr. Robert Nucci — but primarily focused on the billing practices of Dr. Nucci, an orthopedic surgeon at Nucci Spine Institute specializing in spinal injuries. Mr. Bowling received treatment from Dr. Nucci for almost two years, and in exchange for Dr. Nucci’s services, Mr. Bowling signed a letter of protection in which he assigned his insurance benefits and any and all causes of action available to him under the policy to Dr. Nucci.
At trial, the Bowlings presented Dr. Nucci’s testimony via videotaped deposition. Dr. Nucci testified about Mr. Bowling’s injuries and the surgeries performed in treating those injuries. Though State Farm cross-examined another treating physician about the amounts and the reasonableness of the services he rendered to Mr. Bowling, it asked Dr. Nucci only limited questions about any discrepancies between services he performed and the services he billed. State Farm did not ask medical providers affiliated with UCHC or Rose Radiology about their billing practices. And State Farm did not ask Mr. Bowling about what sendees were performed on him and if the services received matched the services for which he was billed.[1] Further, the Bowlings introduced the one-page synopsis of Mr. Bowling’s medical bills into evidence without objection from State Farm.
The majority is correct that in accordance with this court’s determination in USAA Casualty Ins. Co. v. Shelton, 932 So.2d 605, 608 (Fla. 2d DCA 2006), Mr. Bowling was required to prove under section 627.727, Florida Statutes (2004), that the damages in his uninsured motorist (UM) claim “were reasonable, necessary, and related to the accident.” Yet our focus in Shelton was whether evidence of an *543 insurer’s payment of personal injury protection (PIP) benefits was relevant to prove the reasonableness and necessity of the insured’s UM claim. Id. We determined that the payment of PIP benefits was not relevant and therefore inadmissible, but also concluded the introduction of the PIP payments was harmless error because it did not become a feature of the trial. Id. Shelton essentially resolved a similar question raised in this court’s earlier holding in Flores v. Allstate Insurance Co., 883 So.2d 172 (Fla. 2d DCA 2002), in which we noted that a secondary issue of a PIP claim in a UM action could prejudi-cially outweigh any probative value under section 90.403.
Here, State Farm wanted to use Ms. Pacha’s testimony to insinuate that Mr. Bowling’s medical providers acted fraudulently in their treatment of Mr. Bowling. Though State Farm’s allegations are serious and troublesome, I believe Ms. Pacha’s testimony would improperly shift the focus of the trial away from Mr. Bowling’s actual allegations under chapter 627 to the conduct of third-party providers who acted independently of Mr. Bowling.[2] And because Ms. Pacha could only testify as to whether the medical providers properly billed Mr. Bowling but not to the reasonableness of the charges for treatment rendered to him, a questionable billing code entered by a third-party amounted to an irrelevant, collateral issue.[3] Of the $318,303.10 in claimed medical expenses that were calculated after deducting insur-anee payments and adjustments, only about a third of the amount — $111,-938.34 — was not assigned to an appropriate code. Ms. Pacha did not opine that the providers’ description of the $111,938.34 in services meant that the services were not rendered, and she did not calculate an amount of reasonable charges that Mr. Bowling should have incurred.
Alternatively, even if the majority is correct that the evidence was relevant because it would tend to show whether Mr. Bowling’s claimed medical expenses were reasonable and necessary, the admission of evidence involving conduct that Mr. Bowling took no part in would still be unduly prejudicial. See, e.g., United States v. Dennis, 625 F.2d 782, 796-97 (8th Cir. 1980) (“Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues.”). Given the majority opinion’s broad language, I am concerned our holding is a blanket authorization for the regular introduction of billing code experts at trial to contest the reasonableness of injuries. Such a practice would make a third-party’s billing practices the focus of the trial rather than the questions of coverage,[4] negligence by the uninsured motorist, and the extent of the plaintiffs injuries sustained in the accident that are typically raised under section 627.727.
Further, I disagree with the majority’s determination that the trial court abused its discretion by excluding Ms. Pacha be *544 cause she was the only witness who could testify that Mr. Bowling’s medical bills were inaccurate. “It is well settled that the determination of a witness’s qualifications to express an expert opinion is peculiarly within the discretion of the trial judge, whose decision will not be reversed absent a clear showing of error.” Anderson v. State, 863 So.2d 169, 179 (Fla.2003) (emphasis added).
Ms. Pacha was State Farm’s only witness to contest Mr. Bowling’s medical bills because State Farm purposefully made her its only witness. State Farm had several other means to show that the codes in the medical records did not match the procedures billed. For example, State Farm could have shown the bills to each medical provider in question and conducted a detailed inquiry about each disputed charge. State Farm could have had the medical providers’ staff testify as to their billing practices and knowledge of entering the codes to bill Mr. Bowling. State Farm could have gone over each medical bill with Mr. Bowling if it believed the charges were unsupported. See Garrett v. Morris Kirschman & Co., 336 So.2d 566, 571 (Fla. 1976) (concluding plaintiffs testimony “made it a question for the jury to decide, under proper instructions, whether these bills represented reasonable and necessary medical expenses”); see also Albertson’s, Inc. v. Brady, 475 So.2d 986, 988 (Fla. 2d DCA 1985) (holding jury’s finding of damages were unsupported where plaintiffs testimony did not associate each medical bill with injuries resulting from the accident). Above all, State Farm could have objected to the Bowlings’ introduction of its one-page summary of Mr. Bowling’s medical bills. Hence, this case is not like Pascual v. Dozier, 771 So.2d 552, 554 (Fla. 3d DCA 2000), because State Farm had alternate ways to present evidence supporting its theory of the case and its failure to prevail on its trial strategy does not constitute “clear legal error” by the trial court.
Finally, the majority ignores the trial court’s discretion to determine whether Ms. Pacha was qualified to express an expert opinion. Ms. Pacha stated in her deposition that State Farm asked her “to simply look at the billing, coding[,] and documentation and to determine whether the billed procedures are coded appropriately and the documentation was there to support it.” The fact that the coding on some of the medical bills did not match the treatment performed is not something that requires the specialized knowledge of an expert witness to decipher in this case.[5] See § 90.702; see also Dungan v. Ford, 632 So.2d 159, 163 (Fla. 1st DCA 1994) (determining “ ‘reasonableness or necessity’ can be established by lay testimony ... involving] a question of necessity from the perspective of the injured party, rather than from the perspective of a medical *545 expert”). As previously mentioned, there are several other methods in which the discrepancies could have been shown without Ms. Pacha’s testimony. And, as the majority notes, Ms. Pacha lacks the necessary medical background to render an opinion on what I believe is the germane issue — whether the medical care provided to Mr. Bowling was reasonable. Thus, Ms. Pacha’s purported expert testimony was properly excluded because “the facts testified to are of such a nature as not to require any special knowledge or experience in order for the jury to form conclusions from the facts.” Johnson v. State, 393 So.2d 1069, 1072 (Fla.1980). Accordingly, I would affirm the trial court’s decision to exclude Ms. Pacha’s testimony.

. At the appellate oral argument, State Farm contended it could not ask Mr. Bowling about the exact medical services he received because he did not have a vested interest in the amount owed due to his billing arrangement with Dr. Nucci. Yet State Farm did not raise this argument before the trial court. And, while the agreement between Mr. Bowling and Dr. Nucci is not in the record, Dr. Nuc-ci's testimony did not reflect that Mr. Bowling would be absolved of any financial obligation if he did not receive an award for his injuries.

. The parties do not allege that Mr. Bowling was involved in, or would profit from, any of the billing code discrepancies.

. The test for determining whether a matter is collateral or irrelevant "is whether the proposed testimony can be admitted for any purpose independent of the contradictions.”
"Two types of evidence pass this test: (1) facts relevant to a particular issue; and (2) facts which discredit a witness by pointing out the witness’ [sic] bias, corruption, or lack of competency.”
Foster v. State, 869 So.2d 743, 745 (Fla. 2d DCA 2004) (quoting Lawson v. State, 651 So.2d 713, 715 (Fla. 2d DCA 1995)) (internal citations omitted).

.This case did not involve a question of coverage.

. Though the majority cites to U.S. v. Diaz, No. 07-20398-CR, 2008 WL 906725 (S.D.Fla. Mar. 28, 2008), for the proposition that medical billing codes are beyond the knowledge of an ordinary juror, I find Diaz is not pertinent to the underlying issues in this case. Diaz involved two defendants who were charged with numerous offenses, including thirty-two counts of healthcare fraud. Id. at *1. The government sought the expert testimony of a registered nurse practitioner who analyzed a sample of claims packets taken from more than 400 boxes of records from the defendants’ billing company and identified categories in the records which she believed contained fraudulent characteristics. Id. at *2. Hence, the nurse's expert testimony was needed to cull through thousands of pages of records and explain the medical billing codes as it related to the defendants' records and the charges of fraud against the defendants. Id. at *6. In contrast, Ms. Pacha’s testimony as a medical billing and coding expert merely would have shown that the billing records did not match and would not assist the jury in understanding the facts of the case.