F. L. BABCOCK v. W. C. FLOWERS

198 So. 326
En Banc
Opinion Filed July 26, 1940
On Rehearing October 15, 1940

480

*Askew & Kiernan,* for Plaintiff in Error;

*A. Pickens Coles, John R. Parkhill* and *Manuel Garcia,* for Defendant in Error.

BUFORD, J.—The writ of error brings for review judgment in favor of plaintiff in an action for damages resulting from personal injuries.

Plaintiff, as agent for another, had sold defendant a truck and trailer to be delivered to plaintiff (the truck in one city and the trailer in another) at points far north of the State of Florida, with the understanding that plaintiff would go with defendant to points of delivery and assist in driving the truck with trailer to Tampa, Florida.

The trailer had constructed in the front end thereof a sleeping compartment. The compartment extended over the rear left dual wheels of the truck both forward and to the side so that one leaving the compartment would be protected from the wheels, provided one so alighting while the conveyance was in motion did not leave the platform in a position so as to alight in front of the wheels. As near as we can ascertain from the record, the platform was about four feet from the ground. The entrance to the compartment was some 22 or 24 inches square which made it most convenient and practical for one to crawl into the compartment head-first and to slide out feet-first.

The parties were engaged in the enterprise of so transporting the truck and trailer along the highway some distance north of Starke, Florida, in Bradford County, at a late hour of a dark night when the complained of incident occurred. The plan which was agreed upon and adopted by the two men was that they would travel day and night. One would drive a certain number of hours and then the other would

drive for a like number of hours. The one not driving could enter the compartment, *supra,* and sleep during his off period. It was necessary to stop the equipment to make the change of position from truck to trailer.

Defendant was taking his turn driving and plaintiff was in the compartment sleeping when a lurch of the equipment (caused by defendant being required to almost quit the road to avoid collision with another truck) awoke plaintiff. He stuck his head out of the compartment door and made inquiry and learned the cause of the lurch and also that defendant intended to overtake the offending truck, pass it and try to block it to ascertain the identity of the driver and also that it was about time for him to take his turn at driving. He dressed, smoked a cigarette. The truck slowed down and he thought it had come to a stop at which time he swung himself through the compartment feet-first with his back to the floor by grasping a bar affixed to the inside of the compartment above the top line of the door. As plaintiff thus made his exit from the compartment, in some way which is unexplained, he swung his body from that part of the platform extending over the front of the truck wheels. He was struck in the back by the edge of the platform and fell forward face-down, and the truck wheels, still slowly rolling, crushed his leg and the lower part of his body, causing him great pain and permanent injury.

It is apparent from the record (testimony and photographs) that unless one so emerging from the compartment turned his feet, legs and body toward the front end of the truck he would naturally land in the road beyond the left rear dual wheels of the truck and would in nowise be in the path of the wheels and would be out of the line of danger.

It can serve no useful purpose to discuss any questions

presented, except the challenge to the sufficiency of the evidence and the admitting of certain prejudicial and illegal evidence.

Defendant was justified in assuming that plaintiff would alight in the manner least dangerous to himself. The record shows that defendant did not know that plaintiff was in the act of alighting from the trailer at the moment. Plaintiff testified that he could not see objects outside the trailer and he concluded from the lack of sensation of movement that the truck had been brought to a stop but the defendant testified positively that the truck had not been brought to full stop until he heard plaintiff call to him to back up as he was being crushed under the wheel. Plaintiff was in a closed compartment and therefore the physical sensation as to whether or not the vehicle was moving was not a dependable guide because human experience teaches all that under such conditions the sensation is apt to be misleading. The clear preponderance of the evidence shows that the defendant was not guilty of any negligence in the handling of the truck and the uncontradicted evidence shows that defendant did not know, and had no reason to believe, that plaintiff would alight from the trailer in such a way as to be in front of the truck wheels. Therefore, actionable negligence is not imputed. See Woodberry v. Tampa Water Works, 57 Fla. 243, 49 So. 556.

In a case like this there is no presumption of negligence. Mathers v. Botsford, 82 Fla. 497, 90 So. 375. In such case the burden is on the plaintiff to prove some specific act or acts of negligence and that such acts are the proximate cause of the injury. The plaintiff failed to meet this burden. In fact, we are unable to find any evidence in the record which would establish any act of negligence on the part of defendant which resulted in the injury complained of.

Verdicts cannot be based on a mere probability or guess. They must rest upon evidence which can be pointed to in the record as constituting a reasonable foundation.

The record shows that immediately after the accident while plaintiff was being taken to the hospital, plaintiff told defendant that he (defendant) was in no way responsible for the accident.

During the progress of the trial the following occurred: (Plaintiff testifying):

"A. Mr. Hunt came in and Mr. Hunt—they asked how I was feeling and Mr. Hunt tossed this check over there and said here is a Christmas present to cheer you up and make you feel better.

"Q. What was that check?

"A. It was for $150.00 for this commission for the sale to Mr. Babcock, it was part of it, and Mr. Babcock told me I did not have anything to do but concentrate on getting well, that I did not have anything to worry about, that all of the arrangements at the hospital had been taken care of and would continue to be taken care of.

"Q. That is the substance of what he said?

"A. Yes, sir, that is the substance of what he said that I had nothing to do but to concentrate on getting well and get my mind off the worries pertaining to the hospital.

"Q. Did you know at the time that he made that statement that he had already paid $50.00 to the hospital?

"A. Yes, sir, I did. In fact he had told me that he had.

"Q. Now, on another occasion after you were injured—.

"By Mr. Askew: Now if Your Honor please, I move to strike from the record the testimony of the witness if it is sought to be used as a basis for recovery that subsequent to the alleged injury Babcock told the plaintiff not to worry that the hospital expenses would be taken care of upon the

ground that this is an action in tort and no recovery can be had upon such a statement except in a suit on a contract."

"By the Court: I deny the motion. I think it is admissible.

"By Mr. Coles:

"Q. Now, on any other occasion after you were hurt, did you talk with Mr. Babcock with reference to paying the hospital bills or the expenses or anything of that nature after you were injured other than the interview you have just talked about? The night that you were brought into the hospital did you have any conversation with Mr. Babcock that night?

"A. The conversation that I related to you but I had no conversation with him relative to any hospital bill."

And further, Miss Crenshaw (nurse) testifying:

"Q. When was the time you saw Mr. Babcock?

"A. The night Mr. Flowers was brought into the hospital. I was down in the office and saw him down there.

"Q. That was on or about December 19th, last year?

"A. Yes, sir.

"Q. What statement, if any, did the defendant, Mr. Babcock, make in your presence with reference to the payment of the hospital bill for Mr. Flowers?

"A. He told the night supervisor to get the best doctor and give Mr. Flowers attention and he would personally stand good for the bill, that the insurance—." Objection was made.

"By Mr. Askew:

"We now move that the court declare a mistrial in the case because the witness volunteered the information that this liability was covered by insurance and it could not help but prejudice the case as far as the defendant is concerned. Any statement that Mr. Babcock made about the payment of

the bill, that was not objected tó and she answered that question and subsequently volunteered the information about insurance.

"By the Court:

"I will deny the motion. I had an identical situation like that. I do not believe that is sufficient for the court to declare a mistrial in this case. I do not think that is enough, Mr. Askew, frankly. I had a case some years ago. I don't know whether that case ever got to the Supreme Court or not, where I had a defendant that admitted his responsibility stating that he had insurance to cover it. Of course, this is different. I think if this statement here had been one of a more voluntary character where very apparently the object of the witness was to get the thing before the jury, and also the statement concerning the nuisance was one that was wholly unnecessary to say or to bring into the case, I think the situation would be different but I would not say that that is the situation. This witness here is one that is not interested in the outcome of this case at all, and of course, if you want me to, I will instruct the jury not to consider this question of insurance at all. There is no evidence that there is any insurance at all and I will instruct them to disregard this statement of the witness. I am perfectly willing to do that if you want that done.

"By Mr. Askew:

"I certàinly would want the Court to do that in any event but our further position is this, if the Court please, any agreement made by Mr. Babcock to pay any hospital bill is not relevant testimony to show liability in a tort action.

"By the Court:

"It is not an obligation to pay it but it is simply an admission on his part that he is liable not only for the hospital bill but for the whole accident. That is, some admission.

Of course, it is not a very strong one. While saying that he might have had in mind that he was not responsible but that he was doing a humane thing, but at the same time I think it is admissible for the jury to draw its own inference from the language that he used as to whether or not it was an admission of liability or whether he was motivated by something else altogether. But those statements are admissible in my opinion."

We must hold that this testimony was not admissible. In such cases an agreement to pay expenses of the injured constitutes no admission of any actionable negligence on the part of the person making such agreement. A very similar situation is reflected in Sias v. Consolidated Lighting Co., 73 Vt. 35, 50 Atl. 554, where it was said:

"The plaintiff was permitted to testify that the defendant furnished him a nurse. The testimony was offered as tending to show a recognition of liability, and the defendant objected to it as having no such tendency. The court below took the ground that it could not say, as matter of law, that it had no such tendency, but that it should be submitted to the jury for them to say whether, in view of all the circumstances, it had that tendency or not. This was right if the case presented circumstances which tended to characterize the act of a recognition of liability, but we have found nothing of this nature in our examination of the testimony. It is doubtless true that such evidence might be offered in a connection that would give it the effect claimed, but we think the mere fact that an employer furnishes a physician or nurse for one who meets with a disabling accident in his service ought not to be received as evidence tending to establish his liability. It must be the impulse of every humane employer to provide this assistance for a disabled workman without means and the rule of evidence ought to

be such as to permit his doing it without danger to himself. Such an act should be treated as a humane recognition of an existing necessity, and not as an admission of the justice of a claim not then asserted."

See also Binewicz v. Haglan, 103 Minn. 297, 115 N. W. 271, 15 L. R. A. (N. S.) 1096; St. L., etc. R. R. Co. v. Holmes, 96 Ark. 339, 131 S. W. 692.

So it is, the judgment must be reversed.

So ordered.

Reversed.

TERRELL, C. J., and WHITFIELD, J., concur.

CHAPMAN and THOMAS, J. J., dissent.

Justice BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

### ON REHEARING

PER CURIAM.—On rehearing our attention has been called to the fact that in the second sentence of the third paragraph of our opinion filed herein on July 26, 1940, we made an error in describing the trailer involved in this case.

In that sentence we said: "The compartment opened on a narrow platform which extended over the left rear dual wheels of the truck," etc. We find that there was no platform outside of the door of the compartment; therefore, the words, "opened on a narrow platform which" should be deleted. This will leave the sentence reading "The compartment extended over the rear left dual wheels of the truck," etc.

This correction is made and, as so corrected, the original opinion and judgment filed herein on July 26, 1940, is reinstated and adhered to.

488

Terrell, C. J., Whitfield, Brown, Buford and Thomas, J. J., concur.

Justice Chapman not participating as authorized by Section 4687 Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.