HOLT, Associate Justice.
Appellant (plaintiff below) brought this action to recover damages for personal injuries sustained by her as a fare-paying passenger in one of the defendant's taxicabs. She was accompanied by other ladies, three of whom were sitting in the rear seat and one in the front seat. Appellant was a passenger in the rear seat. The accident occurred between 11:30 and 12:00 midnight, at the intersection of Garland and Livingston Streets in Orlando, Florida. The weather was -clear. The other car involved in the accident was driven by one Albert Campbell, who was driving north on Garland Street (the taxi was going south on the same street) and that Campbell was making a left turn at Livingston Street and driving about 5 or 10 miles an hour. He gave a left-hand signal and started turning, stuck his left arm straight out of the car window and testified that he saw the taxicab before it struck him when it was about 50 or 60 feet before the intersection. The taxicab struck the right front fender of his automobile, and the traffic light at the intersection was green both to him and to the taxi driver. Another witness testified that both Campbell and the taxi driver “must have been both making the yellow light.” Other witnesses more or less testified as to the same thing except the plaintiff and those ladies who were with her who testified in her behalf, some of whom were claimants in their own right against the defendant for injuries sustained in the same accident.
Appellant’s chief complaints against the taxi driver was that he was not paying attention ; he was talking to the ladies about himself and the feud that he, the taxi driver, was having with his wife; he did not slow down, neither did he put on his brakes; that he was driving too fast; he had his head turned to the rear of the taxi and was not looking where he was going; he ran through an amber colored traffic light.
Plaintiff claimed ' damages for personal injuries suffered in the collision in the sum of $15,000. Defendant answered, the case was tried, submitted to a jury which rendered a verdict for the defendant. Judgement was rendered on the verdict for the defendant from which this appeal was' taken.
Appellant asks reversal of the cause and a new trial (motion for which was denied by the lower court), for that (1) the jury did not bring in a proper verdict upon the evidence adduced, and (2) the court erred in granting certain charges and refusing certain instructions to the jury requested by appellant.
Disposing of the second question first, we have carefully examined the instructions in light of the law applicable thereto and find there is no merit in such contention. The charges and instructions given were proper and in accordance with law and we find there is no error in the same. Refusal of the trial judge to give those requested by appellant was not error.
The first question that the jury disregarded the manifest weight of the evidence which preponderated in favor of the *503 plaintiff against the defendant must be answered adversely to appellant. It has long been the law of this state and so announced by this Court, on many occasions, that the verdict of a jury will not be disturbed unless it affirmatively appears that the action of the jury was contrary to the manifest weight of the evidence or was motivated by prejudice, passion, mistake or any other improper cause. See Martin v. Stone, Fla., 51 So.2d 33, 35, in which we said: “It is settled law that if there appears in the record substantial competent evidence in support of the verdict rendered, the same should .stand and the trial court is without authority at law to substitute his conclusions Rased on the evidence for the views and conclusions of the jury impanelled and sworn to try the controverted issues of fact. It is true that a trial court may set a verdict aside .and grant a new trial when it is shown that the jury was deceived as to the force and credibility of the evidence, or when the jury was influenced by considerations outside the record, but when no issue is involved but the sufficiency and the probative force of the evidence, the verdict should not be interfered with. It is error to grant a new trial when the verdict set aside is supported by the testimony appearing in the record and nothing can be accomplished except to have another jury review the cause. See Seaver v. Stratton, 133 Fla. 183, 183 So. 335. The record reflects sufficient competent evidence to support the verdict and there is no showing that it is clearly contrary to the manifest weight of the evidence. It is true that disputes and conflicts appear in the evidence, but it has not been established that the jury was motivated by prejudice, passion, mistake or any other improper cause.” Also, Babcock v. Flowers, 144 Fla. 479, 198 So. 326; Golden v. Morris, Fla., 55 So.2d 714; Nelson v. McMillan, 151 Fla. 847, 10 So.2d 565. Also Geffrey v. Langston Construction Co., Fla., 58 So.2d 698, 699, in which we said: “This Court is committed to the rule announced in Seaver v. Stratton, 133 Fla. 183, 183 So. 335; Edwards v. Miami Shores Village, Fla., 40 So.2d 360, and similar cases to the effect that the granting of a motion for new trial is addressed to the sound judicial discretion of the trial court and will not be disturbed on appeal unless a clear abuse of discretion is shown. It is also the rule that a trial court should not set aside a verdict and grant a new trial where the only issue involved is the sufficiency and probative value of the evidence, when there is substantial, competent evidence in the record to support the verdict and the only thing that will be accomplished by a new trial will be to have another jury try the case.”
There is nothing in the record whatsoever to indicate that there was any basis for such a charge against the verdict of this jury. To the contrary, it is apparent that the jury was duly considerate of all the factors which were presented to it. This is especially true and quite significant when it did not allow the old “bugaboo” of defense attorneys, the mention of the dread word “insurance” in the trial of a damage suit, to influence it one bit. It is refreshing to note that although “insurance” and “insurance adjustor” was elicited from one of the plaintiff’s witnesses, there was no objection or exception taken thereto. Moreover, a most unusual turn occurred when the defendant placed its testimony in the record. The first witness of the defendant was the owner of the defendant Yellow Cab Company of Orlando. He testified that the driver of his cab involved in this accident could not be found. In an answer to questions of his own attorney he testified out of his own mouth as follows:
“Q. Do you have insurance? A. Yes, $5000.”
And then on cross-examination by appellant’s attorney, the following took place:
“Q. Mr. Mears, have you made any effort to try to contact Mr. Brendley?
A. I haven’t, but our insurance adjustor has.
“Q. You don’t know of your own knowledge what he found out except what he told you. Is that right? A. That’s right.
“Q. You haven’t made any effort, whatsoever? A. We don’t do our own adjusting. It’s done by our insurance company.”
*504 Later on as a climax to this rare and unheard of frankness in dealing with a jury, the following took place in questioning of one Mr. John Linaman, witness on behalf of the defendant, on direct examination by attorney for appellee:
“Q. Will you please state your name? A. My name is John Lina-man.
“Q. What is your job, sir? A. Independent adjustor and investigator.
“Q. And with whom are you associated ? A. Frank Butterfield & Company.
“Q. Did you have occasion as part of your business to investigate the happening of an accident on February 24 of 1951 between a Yellow Cab taxi and an automobile driven by a young man known by the name of Campbell from Kissimmee? A. Yes, I did.
“Q. Is that the accident that happened in front of the Greyhound Bus Station in that vicinity? A. That’s right.
“Q. Now in making your investigation did you contact Mr. Albert Campbell, the driver of the other vehicle that was involved? A. I did.
“Q. Did you take a statement from him? A. Yes sir. I took a statement from him at his home.”
This court has repeatedly held that we do not sit as an appellate jury and determine what we- would have done as individual jurors had we been sitting in that particular jury box and then decide otherwise than the verdict reflected. The only time that we are warranted in setting aside a verdict of a jury fully approved by the trial judge, is when it is so contrary to the manifest weight of the evidence that it is apparent that it is the result of sympathy, passion, prejudice, mistake or the verdict as rendered reflects an arbitrary or capricious action in weighing or considering the testimony and the instructions of the court upon the law, that then and only in such event or events should a verdict be set aside and a new trial awarded. Trice v. Loftin, Fla., 47 So.2d 6; Renuart Lumber Yards v. Levine, Fla., 49 So.2d 97; Sorg v. Royal, Fla., 41 So.2d 317; Gulf Power Co. v. Rigby, 113 Fla. 739, 152 So. 23, and authorities therein cited.
Such conditions do not prevail here. The jury was properly instructed as to the law in every respect. Whatever prejudicial issues that may have been injected into the cause, and which could have, but did not, sway the judgment of the jury, such as the insurance matter already discussed, was in favor of the appellant and her cause and against the defendant.
Affirmed.
ROBERTS, C. J., and TERRELL and MATHEWS, JJ., concur.