MILLEDGE, Associate Justice
(dissenting).
I think that the judgment should be affirmed. I cannot agree with the conclusion that there should be a new trial on damages, nor do I think that the reasons given in the opinion warrant such a conclusion. It seems to me that to reverse the jury’s findings on damages, something more is required than the mere statement that “we cannot see sufficient predicate in the record for a $32,743.00 judgment.” Since the question of liability is settled the Court must mean that the verdict is such as to indicate that the jury was governed by improper motives. I find nothing in the record or the Court’s opinion to warrant such a conclusion.
The force of the collision between the bus in which Dr. Pelaiá was riding and the defendant’s truck is not a factor. It is common medical knowledge that a ruptured disc frequently arises from an apparently trivial injury. The medical testimony in this case was to this effect and the plaintiff’s spine was peculiarly subject to this type of injury. See also Dr. Kay in “Fractures, Dislocations and Sprains”, page 310.
The Court discusses the failure of the plaintiff to submit to a spinal fusion operation but concludes, properly I think, that this is no factor since the duty to minimize damage does not require one to submit to a dangerous operation. Whether the plaintiff should have submitted was submitted to the jury under appropriate instructions.
The last fact discussed in the opinion is the matter of insurance, indirectly alluded to at the trial. This Court has evidently agreed with the trial judge that under all the circumstances no harm was done the defendant, otherwise the verdict as to liability would not be allowed to stand.
It seems to me that the matter boils down to the proposition that this Court simply thinks that $32,743 is too much money for the plaintiff’s damage. Even if the appellate court were, as though it were the jury, to examine the question of damage de novo, I cannot agree with the majority’s conclusion.
The plaintiff, a dentist, was 35 years of age at the time of his injury. His occupational disability was estimated at from 65% to 80% and will get progressively worse unless he has a spinal fusion. Since the accident he works about one-third of his former number of hours. His earnings have actually been reduced by about $4,800 annually. His loss of earnings reduced to their present value (at 3%) comes to over $90,000 without regard to the fact that it is earning capacity, not actual earnings, which is the measure of the loss. Mullis v. City of Miami, Fla., 60 So.2d 174. A young dentist could anticipate increased earnings as his experience and reputation grows. A dentist who has to take drugs to ease the pain as he works and must frequently lie down during office hours can hardly expect to build a reputation. The inability to play golf or to engage in any physical exertion, such as chores around the house, is a substantial item of damage, but probably not so serious as the frustration in being unable to do the quality and *843 quantity of professional work for which the plaintiff was trained and is technically capable.
So far from being warranted in assuming that the jury was governed by some improper motive in reaching a verdict so large, it seems more reasonable to look for some reason why the verdict was not larger. A rational assumption is that the jury took into account the fact that a spinal fusion had a 65% chance of success, and severely reduced the amount on that account.
Since the majority opinion mentions the fact that Judge Frank Smith first ordered a remittitur and then receded from his position, perhaps this is thought to have some significance now. Judge Smith’s order recites that in requiring a remittitur he was wrong as a matter of law, which he then rectified. His order includes the following on this point:
“Upon a reconsideration of the law of mitigation of damages involved in the motion for new trial and my ruling that the verdict was in violation of the law of mitigating damages, I am now of the opinion that I must reverse my ruling.
“It is a question for the jury to decide whether or not the injured person acted as a reasonable and prudent man in failing to submit to the operation, considering all of the circumstances. Counsel for Defendant is quite correct in his argument that the Defendant is entitled to the benefit of whatever evidence shows that the operation was advised, in what it consisted and the results to be expected. The testimony does not show that the operation is simple, safe, painless, and free from doubt as to results. It is clear that the anesthetic would be required, that the operation is very delicate and requires great skill and that the patient would be hospitalized for more than two weeks and would require several months for a complete recovery after each operation. It was for the jury to decide whether or not plaintiff was acting as a reasonable and prudent man in failing to have the operation advised by his surgeon.
“From the evidence it appears that it is a major operation of a very serious character and that the chances of success are from 60 to 65%.”
This Court has repeatedly held that findings of fact by a jury will be sustained where there is substantial evidence to support them. W. H. Clark Fruit Company v. Bounds, Fla., 58 So.2d 552. Florida Power & Light Company v. Brinson, Fla., 67 So.2d 407, Florida Power & Light Company v. Robinson, Fla., 68 So.2d 406, Wheeler v. Yellow Cab Co. of Orlando, Fla., 66 So.2d 501, are only a few. This rule, in my opinion, governs this case.
I therefore dissent.
HOBSON and DREW, JJ., concur.