IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

GWENDOLYN ECHO,

   Appellant,

v.

MGA INSURANCE COMPANY,
INC.,

   Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-1444

Opinion filed February 16, 2015.

An appeal from the Circuit Court for Escambia County.
Linda L. Nobles, Judge.

J. Alistair McKenzie of McKenzie Law Firm, P.A., Pensacola, for Appellant.

Jeffrey E. Bigman and Amanda J. Jacobsen of Smith, Hood, Loucks, Stout, Bigman & Brock, P.A., Daytona Beach, for Appellee.

THOMAS, J.

   Appellant appeals a final summary judgment in a favor of Appellee MGA Insurance Co. ("MGA"), in which the court determined MGA was entitled to rescind an insurance policy based on Appellant's material misrepresentations. Appellant raises four issues on appeal, asserting that the trial court erred by:

1) rejecting Appellant's argument that MGA waived its misrepresentation defense or confessed judgment when it made personal injury protection (PIP) payments to Appellant's medical care providers after Appellant filed suit; 2) finding Appellant lacked standing to assert her waiver and confession of judgment arguments because she assigned her rights to PIP benefits to her medical care providers; 3) interpreting section 90.409, Florida Statutes, to preclude evidence of the PIP payments in support of those arguments; and 4) finding that there were no genuine issues of material fact as to the misrepresentation issue. For the reasons discussed below, we reverse as to the first three issues. We affirm as to the fourth issue without further comment.

Factual Background

Appellant purchased a 2008 Ford Focus in the name of one Mildred White. Appellant was at no point a registered owner of that vehicle, and only Ms. White's name appears on the documents related to the vehicle. Regardless, Appellant purchased the subject insurance policy covering the vehicle, and hers is the only name appearing on any of the insurance documents. The insurance application Appellant signed listed her as the only driver or resident in her household.

Approximately one year later, Appellant was involved in a motor vehicle accident while she was driving the Focus. Appellant underwent medical treatment with several medical care providers and submitted a claim with MGA. MGA

2

responded with a letter advising Appellant that, pursuant to its investigation, it had learned that, contrary to her assertion in the insurance application, Appellant was not the owner of the Focus. MGA asserted that this constituted "a misrepresentation, omission, concealment of fact and/or incorrect statement and was material." MGA also asserted that it either would not have issued the policy or would not have issued it for the same premium had it known the truth; thus, there was no coverage for the claim and the "policy is being voided ab initio." The letter was accompanied by a check refunding all premiums Appellant had paid, which Appellant did not cash. The record also includes a letter from MGA to one of Appellant's medical providers indicating that it was "unable to make payment on charges submitted because your patient's claim has been denied for Material Misrepresentation."

Appellant filed a breach of contract action against MGA seeking PIP benefits, payment for vehicle repair costs, and legal representation in the event she was sued for the accident, all pursuant to the subject policy. MGA's answer to the complaint generally denied the substantive allegations and included an affirmative defense asserting that Appellant's misrepresentation "regarding the identity of the owner of the auto she was attempting to insure under said policy" entitled it "to revoke and/or cancel the contract of insurance pursuant to F.S. 627.409," which it did pursuant to the notice provided in the aforementioned letter and its refund of

3

Appellant's premium payments. MGA also reiterated its position that the policy was void "*ab initio*." Nearly one year after Appellant filed her complaint, however, MGA paid over $10,000 to Appellant's medical care providers.

MGA later amended its affirmative defenses, asserting that Appellant lacked "standing to pursue a claim for PIP benefits" because she "executed an assignment of any and all benefits she may have under the policy . . . including but not limited to the right to receive payment; the right to bring suit for an alleged breach of contract" and any claim for fees, costs, and interest. Appellant subsequently filed an amended complaint which omitted any claim for PIP benefits. Appellant also filed a motion for partial summary judgment, asserting as grounds for entitlement the fact that MGA paid PIP benefits pursuant to the policy and, thus, waived its argument that the insurance contract was void *ab initio*. Appellant argued that the "confession of judgment" doctrine also applied, because MGA made the PIP payments after Appellant filed suit and before a judgment was entered.

After a hearing on the parties' respective motions, the court found that the record established that Appellant completed the application for the subject insurance policy and indicated in it that she was the vehicle's registered owner, "even though she knew at the time of the application" that this was not the case. The court determined that the policy was issued based on this representation and that the "record evidence indicates that the policy would not have been issued had

4

[MGA] known that [Appellant] did not own the vehicle." The court also found that Appellant's "misrepresentations were material to the risk being assumed by [MGA] and were relied upon by [MGA] in deciding whether the policy of insurance should have been issued," thus, rescission was appropriate pursuant, to section 627.409(1)(a), (b), Florida Statutes, and case law.

Addressing Appellant's waiver and confession of judgment arguments, the court found that Appellant had "no standing to bring suit for [PIP] benefits under the policy as she assigned those benefits to her treating physicians." Finally, the court found that section 90.409, Florida Statutes, "prohibits the introduction of evidence of furnishing; offering; or promising to pay medical or hospital expense to prove liability. Therefore [MGA's] payments of PIP benefits to medical providers are inadmissible." The court entered judgment in MGA's favor, and this appeal followed.

Standard of Review

Because this appeal concerns a final summary judgment, our review is *de novo*. See Volusia Co. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000) (holding: "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. Thus, our standard of review is de novo.") (citation omitted).

*Waiver, Confession of Judgment, and Appellant's Standing*

We agree with the trial court's finding that Appellant made material misrepresentations in the insurance application, warranting rescission pursuant to section 627.409(1)(a), (b), Florida Statutes. We find that the trial court erred, however, by failing to consider Appellant's waiver and confession of judgment arguments. The trial court found those arguments failed, because Appellant lacked standing to raise them based on her assignment of PIP benefits. As of the time of the hearing, however, Appellant was no longer seeking payment of PIP benefits; she was seeking payment for vehicle repair costs and legal representation, in the event she was sued for the accident. Furthermore, Appellant's position was that because of MGA's payment of PIP benefits after she filed her complaint, MGA could no longer contend that the contract was void, and regardless of assignment of PIP benefits, she still had standing to contest whether MGA waived its right to rescind the contract.

MGA counters Appellant's waiver and confession of judgment arguments by asserting that once it rescinded the contract, because of Appellant's misrepresentations, the contract became "void *ab initio.*" Thus, MGA argues the contract could not be "resurrected" even if it took actions inconsistent with the rescission. We disagree.

6

Simply because MGA deemed the contract void because of Appellant's alleged misrepresentation does not mean the contract never existed. Pursuant to section 627.409(1), Florida Statutes, an insured's material misrepresentation "may prevent recovery under the contract or policy" if certain conditions exist. Thus, the statute does not provide that the contract instantly ceased to ever exist, because of an insured's misrepresentation (i.e., void *ab initio*); rather, it gives an insurer the right to rescind an insurance contract if the statutory criteria are met (i.e., the contract is voidable). Furthermore, case law establishes the principle that an insurer can forfeit its right of rescission.

It is "well settled in insurance law that, when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof." Johnson v. Life Ins. Co. of Ga., 52 So. 2d 813, 815 (Fla. 1951). Furthermore, in United Services Automobile Association v. Clarke, the court acknowledged that an insurer can waive its right to void a policy pursuant to section 627.409, but found that the carrier in that case had not done so. 757 So. 2d 554, 556 (Fla. 4th DCA 2000). Thus, MGA's position that it could do nothing to "resurrect" or "cure" a contract that was not in existence once void *ab initio* is not supported in law.

Because of its erroneous conclusion that Appellant lacked standing to raise her waiver argument, the trial court did not address the factors necessary for determining whether MGA waived its right to void the contract. Consequently, we remand this matter for the court to resolve the waiver issue on the merits or, alternatively, submit the matter to a jury. See, e.g., Hill v. Ray Carter Auto Sales, 745 So. 2d 1136, 1138 (Fla. 1st DCA 1999) (holding "[w]hether a waiver has occurred in any given situation is generally a question of fact."); Pajcic v. Am. Gen. Life Ins. Co., 419 F. Supp. 2d 1380, 1382 (M.D. Fla. 2006) (holding: "Generally, the existence or absence of waiver is a question of fact to be answered by the jury. However, if based on the facts surrounding a claimed waiver, a reasonable person could draw only one conclusion from those circumstances, then the existence or absence of waiver is a question of law for the Court.") (citation omitted). We decline Appellant's suggestion that we hold waiver occurred here as a matter of law.

The court applied the same lack of standing rationale to its finding that Appellant's confession of judgment argument "fails." But "where an insurer pays policy proceeds after suit has been filed but before judgment has been rendered, the payment of the claim constitutes the functional equivalent of a confession of judgment or verdict in favor of the insured, thereby entitling the insured to attorney's fees." Ivey v. Allstate Ins. Co., 774 So. 2d 679, 684-85 (Fla. 2000).

8

And this "doctrine applies where the insurer has denied benefits the insured was entitled to, forcing the insured to file suit, resulting in the insurer's change of heart and payment before judgment." State Farm Florida Ins. Co. v. Lorenzo, 969 So. 2d 393, 397 (Fla. 5th DCA 2007). Finally, "the question of whether an insurer's post-suit payment of additional policy proceeds constitutes a confession of judgment will be determined based on whether 'the filing of the suit acted as a *necessary catalyst* to resolve the dispute and force the insurer to satisfy its obligations under the insurance contract.'" Clifton v. United Cas. Ins. Co. of Am., 31 So. 3d 826, 829 (Fla. 2d DCA 2010) (emphasis supplied) (quoting Lewis v. Universal Prop. & Cas. Ins. Co., 13 So. 3d 1079, 1081 (Fla. 4th DCA 2009)).

Here, although Appellant may have lacked standing to sue for payment of PIP benefits under the policy by her assignment of those benefits, MGA took the position that it had no obligations at all under the policy, based on section 627.409(1), Florida Statutes. After Appellant filed suit, however, MGA made PIP payments pursuant to the policy. There remains, therefore, the matter of whether MGA made these payments as a result of Appellant's lawsuit and, thus, whether this constituted a confession of judgment -- i.e., a confession that, contrary to MGA's assertion, the insurance contract was in fact valid -- or whether there existed some other reason for MGA's decision to make the payments. This is a question for the trial court to resolve.

9

## *Section 90.409, Florida Statutes*

Section 90.409, Florida Statutes, in its entirety, provides:

> Evidence of furnishing, or offering or promising to pay, medical or hospital expenses or other damages occasioned by an injury or accident is inadmissible to prove liability for the injury or accident.

The trial court agreed with MGA's argument that this statute renders evidence of paying for medical expenses inadmissible to "prove liability." But both MGA and the learned trial court fail to note the clause "for the injury or accident" following the word "liability." Thus, the plain language of the statute prohibits evidence of, *inter alia*, paying medical expenses to prove an insured's **liability** for causing an injury or accident, not for an insurer's **obligation** to make payments for or on behalf of its insured as a result of injury or accident, based on a contract of insurance.

The reason for this evidentiary rule was explained by the Florida Supreme Court in Carls Markets, Inc. v. Meyer, 69 So. 2d 789, 793 (Fla. 1953), in which the court held that "evidence of insurance carried by a defendant is not properly to be considered by the jury because that body might be influenced thereby to fix liability where none exists, or to arrive at an excessive amount through sympathy for the injured party and the thought that the burden would not have to be met by the defendant." See also Babcock v. Flowers, 198 So. 326, 329 (Fla. 1941) (in which the plaintiff in an automobile negligence action sought to testify that the

10

defendant had offered to pay her medical bills and was covered by insurance, and the court held such testimony was inadmissible because "an agreement to pay expenses of the injured constitutes no admission of any actionable negligence on the part of the person making such agreement."). Here, however, Appellant sought to admit MGA's PIP payout ledger, not as evidence of liability for an injury or accident, but as evidence that MGA waived its affirmative defense of misrepresentation and resultant rescission. To put it another way, Appellant sought to use the evidence to prove that a contract existed despite MGA's claim to the contrary.

MGA relies on USAA Casualty Insurance Compapny v. Shelton, 932 So. 2d 605 (Fla. 2d DCA 2006), to support its position that the payout ledger was inadmissible. In that case, the insureds in an uninsured motorist action obtained a judgment against USAA for policy limits. The insurer argued that "the trial was tainted by the court's decision to allow the [insureds] to introduce evidence concerning USAA's standards for payment of personal injury protection (PIP) benefits." Id. at 606. The Second District first explained that the case "did not involve questions of **coverage** or negligence. The sole issue was whether Mrs. Shelton's medical bills were reasonable, necessary, and related to the accident" and "whether evidence of a carrier's payment of PIP benefits is admissible as part of the plaintiff's evidence that medical damages sought in a UM

11

suit are reasonable, necessary, or connected with the accident." Id. at 606-07 (emphasis added). The court held that, although "a carrier's payment of PIP benefits is not an admission that its insured's claims for UM benefits are reasonable, necessary, and connected to the accident . . . [b]ecause of the unique policy considerations underlying PIP coverage . . . evidence of an insurer's payment of PIP benefits is not relevant, and therefore is not admissible, to prove the **propriety** of claimed medical damages in a UM action." Id. at 607 (emphasis added).

The court explained:

An insurer is in a far different posture under UM coverage. The purpose of the insurance is to provide a source of recovery when the insured has been injured by a tortfeasor with insufficient or no insurance. § 627.727(1), Fla. Stat. (2002). Therefore, in a UM claim the insured must prove that she is legally entitled to recover from the owner or operator of the uninsured or underinsured vehicle. *Id.* Just as she would in a suit against the tortfeasor, the insured bears the entire burden to prove that her claimed damages were reasonable, necessary, and related to the accident. And, unlike the case in a PIP claim, an insurer's assessment of a UM claim is unrestrained by concerns about statutory deadlines, penalties, or attorney's fees, or by the burden to develop "reasonable proof" that it is not responsible for the claim.

Id. at 608.

The Shelton decision does not support MGA's arguments on the question of the admissibility of the PIP payout ledger, because the issue in that case was not whether an insurer had waived its right to void a policy. Rather, the issue in Shelton was the admissibility of evidence of PIP benefits with respect to the

12

reasonableness of the damages being sought by the insureds, and whether those damages were related to the accident in question. The case before us involves a contract or coverage dispute, which was, as the <u>Shelton</u> court expressly pointed out, not at issue in that case, whereas <u>Shelton</u> involved a question of the admissibility of evidence as to damages sounding in tort.[1]

Thus, in the context of section 90.409, "liability" clearly refers to an insured's (or, in a UM claim, uninsured motorist's) responsibility for causing injury or accident, not for an insurer's obligations to its insured pursuant to an insurance contract.[2] Conflating an insured's liability for causing injury or accident with an insurer's contract obligation disregards the policy behind the rule codified in section 90.409, as explained by the supreme court in <u>Meyer</u>. Thus, the trial court erred by ruling the PIP ledger was inadmissible under these circumstances.

Conclusion

---

[1] Although <u>Shelton</u> does not support MGA's interpretation of section 90.409, the "unique policy considerations" discussed in the case may bear some relevance on the issue of why MGA made the PIP payments it did despite rescinding the contract.

[2] The <u>Shelton</u> court cited with approval Judge Torpy's concurrence, in which he opined that "payment of medical expenses by USAA, pursuant to the PIP coverage" was not admissible "for the purpose of proving USAA's **liability** for the **injury** under the uninsured motorist component of its policy." <u>Id.</u> at 1180 (emphasis added). In a UM claim, the insurer is effectively put in the shoes of the uninsured tortfeasor for damage purposes; thus the reference to the "insurer's" liability for injury should be read in that context.

13

We affirm the trial court's granting of partial summary judgment in favor of MGA on the issue of material representation. We reverse, however, the trial court's conclusions that Appellant lacked standing to establish that MGA forfeited its right to rescind the contract at issue, based on that misrepresentation. The trial court also erred in ruling that evidence of MGA's PIP payments was inadmissible for that purpose. We therefore REMAND for the trial court to address the merits of Appellant's waiver and confession of judgment arguments.

AFFIRMED in part, REVERSED in part, and REMANDED with instructions.

ROWE and OSTERHAUS, JJ., CONCUR.