NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

FLORIDA INSURANCE GUARANTY
ASSOCIATION,

        Appellant,

v.

YANICET REYES,

        Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2D19-2173

Opinion filed September 30, 2020.

Appeal from the Circuit Court for
Hillsborough County; Rex M. Barbas,
Judge.

Dorothy V. DiFiore of Quintairos, Preito,
Wood & Boyer, Tampa, for Appellant.

Kurt J. Rosales and George A. Vaka of
the Vaka Law Group, P.L., Tampa, for
Appellee.


LaROSE, Judge.

        Florida Insurance Guaranty Association (FIGA) appeals the trial court's

final judgment awarding Yanicet Reyes attorney's fees and costs in her sinkhole lawsuit.

We have jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A). We conclude that the trial

court erred in granting this requested relief; there was no covered insurance claim

triggering entitlement to fees. Consequently, we reverse.

## I.    Facts

Ms. Reyes reported suspected sinkhole damage—i.e., cracking and separation issues—to her insurer, HomeWise Preferred Insurance Company. HomeWise investigated, concluded there was no evidence of sinkhole activity, and determined the claimed damage resulted from causes excluded under the policy. HomeWise denied Ms. Reyes's claim.  Ms. Reyes then hired an investigator who concluded that the damage was caused by sinkhole activity.

Later, HomeWise became insolvent and FIGA assumed responsibility for administering Ms. Reyes's claim.  Over a year later, Ms. Reyes contacted FIGA and FIGA reopened her claim.  Two months later, Ms. Reyes sued FIGA.  Her complaint alleged that the claim was "a 'covered claim' as defined by § 631.54(3), [Florida Statutes (2011),][1]" and that the damage was "a result of sinkhole activity."

FIGA requested neutral evaluation.[2]  The neutral evaluator found no sinkhole activity or sinkhole loss.  The neutral evaluator also determined that any property damage was caused by "differential settlement of the foundations," "a lack of properly spaced control joints," "installation deficiencies," and "differential movement as

---

[1]The term "covered claim" is now defined in subsection (4).  See § 631.54(4), Fla. Stat. (2016).  Nevertheless, we refer only to the 2011 version in this opinion because "FIGA's duty to an insured arises under the statute applicable at the time an insurer is declared insolvent and the insured is determined to have a " 'covered claim.' "  See de la Fuente v. Fla. Ins. Guar. Ass'n, 202 So. 3d 396, 405 (Fla. 2016).

[2]The neutral evaluation was performed in accordance with chapter 69J-8 of the Florida Administrative Code and as authorized by section 627.7074, Florida Statutes (2013).  The evaluator held a conference at the residence, during which the evaluator observed the damage and allowed both parties to submit reports and any other information pertinent to resolving the sinkhole claim.

a result of temperature changes."  As did HomeWise, FIGA concluded that Ms. Reyes's claim was not covered under the policy and denied the claim.

A few weeks before the trial, the parties agreed to settle the case on the following terms[3]:

1.     The parties will agree to a binding third-party evaluation of the existence or nonexistence of sinkhole activity at Plaintiff's property. . . .  Defendant will bear the cost of the third-party evaluation.

2.     If the third-party evaluator determines no sinkhole activity is present at the property, Defendant will pay $15,000.00 in aboveground repairs directly to a licensed contractor of Plaintiff's choosing.  Half of the money will be paid upon providing of the estimate, the other half will be paid upon completion.

3.     If the third-party evaluator determines sinkhole activity is present, Plaintiff will pick from the list of remediation engineers provided to Plaintiff's counsel on or about February 6, 2017 by Defendant.  Said engineer will design a program to stabilize the land and building and repair the foundation.

. . . .

11.     Plaintiff's entitlement to and the reasonable amount of attorney's fees will be left open for the Court to determine.

12.     FIGA will not seek fees or costs from Plaintiff.

13.     After a final determination of all elements, including possible appeal of the court's rulings on Plaintiff's attorney's fees and costs, Plaintiff will dismiss her case with prejudice.

---

[3]These terms were confirmed in an e-mail from FIGA's counsel to Ms. Reyes's counsel.

Thereafter, the evaluator determined there was no sinkhole activity and reaffirmed that the causes of Ms. Reyes's loss were excluded under the policy. Thus, FIGA would pay $15,000 to Ms. Reyes's contractor as agreed by the parties.

Ms. Reyes eventually filed a motion to recover attorney's fees and costs. She claimed entitlement to fees under section 631.70 and section 627.428, Florida Statutes (2011). According to her, FIGA denied her covered claim by affirmative action and subsequently accepted coverage, thus confessing judgment.

At the hearing on the fee motion, FIGA asserted that Ms. Reyes did not have a covered claim and that it never accepted coverage. FIGA argued that the $15,000 payment was a "consolidation prize" and "consideration to [Ms. Reyes] to incentivize her to enter into the binding peer review program"; it was not a payment under the policy. FIGA further argued that attorney's fees were not warranted under the confession of judgment doctrine because it never incorrectly denied coverage where the previous investigators and evaluator found no sinkhole activity or other covered claim.

Ms. Reyes responded that, under her all-risk policy, FIGA had "to prove that all the damages claimed were caused by excluded perils." Ms. Reyes then asserted that FIGA may only pay for claims that are covered under the policy, "[a]nd[] that's what they did here. They're paying for the aboveground damages that they were unable to exclude."

The trial court concluded that FIGA could pay money to settle a claim. See § 631.57(2), (5). But, it continued, "[i]t's not really clear that this $15,000 was an inducement." The trial court noted that there was no limiting language in the settlement agreement providing that the $15,000 payment was an inducement or that FIGA was not acknowledging coverage. The trial court also found that Ms. Reyes generally

- 4 -

alleged that she suffered covered losses separate from the alleged sinkhole activity. The trial court concluded, "So, based upon my interpretation of this e-mail [of the settlement agreement], and strictly upon this interpretation of this e-mail, I believe that there's an entitlement to attorney's fees." The trial court granted Ms. Reyes's motion for attorney's fees.

FIGA sought rehearing and the trial court held another hearing. The parties maintained their respective positions from the initial hearing on entitlement to fees. FIGA emphasized that the binding evaluator concluded there was no sinkhole activity and found that the causes of damage were excluded under the policy. The trial court reasoned that case law categorized any payment as a payment under the policy where FIGA failed to restrict its "tender of payment in some fashion by saying it is . . . not a confession of judgment." The trial court denied FIGA's rehearing motion. The parties then agreed to $98,594.86 in attorney's fees and costs, and $23,594.86 in taxable costs. The settlement agreement did not waive FIGA's right to appeal the trial court's ruling on entitlement to attorney's fees.

## II.    Analysis

FIGA argues that the trial court erred in awarding Ms. Reyes attorney's fees under section 631.70 because FIGA did not deny a "covered claim." FIGA insists that the $15,000 payment was "for repairs to [Ms.] Reyes'[s] home as an inducement or consideration to enter into the settlement agreement"; it was not made pursuant to any obligation under the policy. Ms. Reyes contends that she was entitled to attorney's fees because FIGA's agreement to pay $15,000 for her aboveground, non-sinkhole damages amounted to a confession of judgment and FIGA did not prove that the payment was merely an inducement to settle.

Generally, we review a trial court's award of attorney's fees for abuse of discretion. Grapski v. City of Alachua, 134 So. 3d 987, 989 (Fla. 1st DCA 2012). Yet, "[w]hether a party is entitled to statutory attorney's fees is a matter of statutory interpretation, which this [c]ourt reviews de novo." Parker v. Bd. of Trs. of the City Pension Fund for Firefighters & Police Officers, 149 So. 3d 1129, 1132 (Fla. 2014).

Section 627.428(1) provides, as follows:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

A fee award under section 627.428 serves "as a penalty to discourage wrongful refusals to pay policy benefits." Fla. Ins. Guar. Ass'n v. Petty, 44 So. 3d 1191, 1193 (Fla. 2d DCA 2010) (quoting Liberty Nat'l Life Ins. Co. v. Bailey ex rel. Bailey, 944 So. 2d 1028, 1030 (Fla. 2d DCA 2006)). Hence, an insured is entitled to attorney's fees under section 627.428 where the insurer incorrectly denied benefits. Johnson v. Omega Ins. Co., 200 So. 3d 1207, 1209, 1214-19 (Fla. 2016); see also Ivey v. Allstate Ins. Co., 774 So. 2d 679, 684-85 (Fla. 2000) ("[W]here an insurer pays policy proceeds after suit has been filed but before judgment has been rendered, the payment of the claim constitutes the functional equivalent of a confession of judgment or verdict in favor of the insured, thereby entitling the insured to attorney's fees."); Echo v. MGA Ins. Co., 157 So. 3d 507, 512 (Fla. 1st DCA 2015) ("[T]his '[confession of judgment] doctrine applies where the insurer has denied benefits the insured was entitled to, forcing the insured to file suit,

- 6 -

resulting in the insurer's change of heart and payment before judgment.' " (quoting State Farm Fla. Ins. Co. v. Lorenzo, 969 So. 2d 393, 397 (Fla. 5th DCA 2007))).

But for FIGA cases, section 627.428 applies only where FIGA "denies by affirmative action, other than delay, a covered claim or a portion thereof." § 631.70; see also Fla. Ins. Guar. Ass'n v. Rubin, 45 Fla. L. Weekly D219 (Fla. 4th DCA Jan. 29, 2020) ("Section 631.70[] limits the scope of section 627.428[.]").  Section 631.54(3) defines a "covered claim" as "an unpaid claim . . . which arises out of, and is within the coverage, and not in excess of, the applicable limits of an insurance policy to which this part applies, issued by an insurer."  The plain language of section 631.54(3) indicates that a claim "must be within the coverage of, or be included within the risks taken on and losses protected against in, an insurance policy."  Petty v. Fla. Ins. Guar. Ass'n, 80 So. 3d 313, 316 (Fla. 2012).  Thus, the FIGA statute protects insureds for covered claims, not all claims.  See § 631.51(1); Jones v. Fla. Ins. Guar. Ass'n, 908 So. 2d 435, 442 (Fla. 2005); Petty, 44 So. 3d at 1195.

"[A]n insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect.  The burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms."  Citizens Prop. Ins., Corp. v. Salkey, 260 So. 3d 371, 375 (Fla. 2d DCA 2018) (alteration in original) (quoting Mejia v. Citizens Prop. Ins. Corp., 161 So. 3d 576, 578 (Fla. 2d DCA 2014)).

Ms. Reyes's investigator found that the cause of damage was sinkhole activity.  But the evaluator, under the settlement agreement, concluded otherwise. Moreover, the other reports in our record cited portions of the policy and indicated that other possible causes of damage were excluded under the policy.  Despite this record

- 7 -

evidence, the trial court found that the settlement agreement's $15,000 payment was a confession of judgment. In our view, the trial court improperly conflated its obligation to determine whether (1) FIGA affirmatively denied a covered claim and (2) Ms. Reyes was the prevailing party entitled to attorney's fees under section 627.428. If FIGA never affirmatively denied a covered claim, a court need not reach the second question. See § 631.70.

Obviously, the settlement agreement obligated FIGA to pay something to resolve Ms. Reyes's lawsuit.[4] But FIGA never acknowledged that the claim was covered under the policy. In fact, when the parties agreed to settle, there was no evidence that the damage (including aboveground damages) resulted from a covered cause other than the alleged sinkhole activity. After the binding peer review by the evaluator, it was undisputed, by virtue of the settlement agreement, that there was no sinkhole activity. The evaluator resolved the parties' dispute as to whether the claim was a covered sinkhole loss.

Moreover, because the reports and policy show that there was no evidence suggesting that the alleged aboveground damages were excluded under section 631.54(3), FIGA did not affirmatively deny a "covered claim" and was not responsible for attorney's fees. See Fla. Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc., 864 So. 2d 1126, 1130-31 (Fla. 2d DCA 2003) ("[B]ecause the damages

---

[4]We note that it might have been more prudent to specify in the settlement agreement that the $15,000 payment was for damages excluded under the policy and was merely to induce Ms. Reyes to agree to binding peer review. See, e.g., Fisher v. Certain Interested Underwriters at Lloyds Subscribing to Contract No. 242/99, 930 So. 2d 756, 759 (Fla. 4th DCA 2006) (disagreeing that payment was a confession of judgment where the insurer indicated in its cover letter forwarding the payment "that payment was made because of a recent decision of the United States District Court for the Middle District of Florida").

award is not a covered claim as defined, FIGA did not affirmatively deny a covered claim and thus is not responsible for the attorney's fees and costs Vernay incurred in prosecuting the declaratory judgment action.").

### III.     Conclusion

The trial court's application of the confession of judgment doctrine ignored the limitations on FIGA's obligation to pay fees and rewards Ms. Reyes for pursuing a claim not covered by her policy.  See Petty, 44 So. 3d at 1195.  Thus, the trial court erred in finding that Ms. Reyes was entitled to attorney's fees.  We reverse the trial court's final judgment awarding Ms. Reyes attorney's fees and costs.  We need not reach FIGA's other issue on appeal.

Reversed.


KELLY and SMITH, JJ., Concur.